*Hord, Payne & Waller* for appellants.

---

ASSUMPSIT.

*Case* 21.

Sept. 21.

Case stated.

# Hackley's Executors *vs* Swigert.

### ERROR TO THE ANDERSON CIRCUIT.

*Assumpsit.    Attachment lien.    Pendente lite purchase.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

AN attachment was sued out on a bill filed by Lillard against James S. Hackley, as a fraudulent debtor, and levied on a slave by the name of Jourden, and some other estate. This suit was afterwards consolidated with other bills and cross bills filed by other creditors. After the levy of the attachment, an execution issued on a judgment in favor of Major, for $1000, against James S. Hackley and John Hackley, and by the *direction* of John, was levied on the boy Jourden. Before the sale John died, and his executors, the plaintiffs in error, by written instructions, directed the Sheriff to proceed with the sale. He did proceed, and sold the boy, and Swigert, the defendant in error, purchased at $370, and paid the price to the Sheriff, which was credited on the execution of Major. The suit of Lillard, consolidated with others, went on, and a decree was rendered for the sale of the boy and other property attached and in litigation, and all persons in possession directed to surrender the property to a Commissioner for sale. The whole of the other property was sold, but Swigert refusing to surrender the boy Jourden, a rule was served on him to show cause why an attachment should not issue against him. Upon the

return of the rule, Swigert appeared and showed for cause the facts stated above, and resisted the rule. The Court overruled his objections and ordered a surrender absolutely. The boy, under the order of the Court, was given up to the Commissioner and sold, and the money applied in part to the satisfaction of Lillard's demands, and in part in satisfaction of the decree in favor of other creditors whose suits had been consolidated with Lillard's. Swigert immediately brought suit in detinue against Draffin, the purchaser of the boy under the Commissioners sale, and notified the executors of the suit, and of his desire that they should appear and assist in its prosecution, and of his intention to hold them, as executors, responsible in the event of his failure. The trial in detinue was had on the merits, and Swigert defeated. He then instituted this suit in assumpsit, in which are several counts, one on *indebetatis assumpsit*, one on an implied warranty of title, and others seting out the special facts of the case, and concluding in assumpset.

Upon the trial, a verdict was found for Swigert, and judgment rendered thereon for $370, the amount he paid on the execution of Major, and Hackley's executors have brought the case to this Court.

The slave Jourden, when attached, was in the custody of the law, and under the entire control of the Chancellor, and couldnot be levied on, seized, or sold, under the execution, as was intimated by this Court in the case of *Oldham* vs *Scrivener*, (3 *B. Monroe*, 579.) The levy, seizure and sale was, therefore, wholly illegal, irregular and unauthorized, and the fact that John Hackley directed the levy, cannot give validity to the levy or sale; besides, he had no title to the slave or any color of title against the claims of creditors, prior or subsequent, and Swigert, by his purchase, derived no title from him. The title was in James S. Hackley, who was a party to the Chancery proceeding, and was concluded by it. Swigert, who was no party to the suit, had by the wrongful act and order of John, became an intermedler with a slave that was in the custody and under the control of the Chancellor, in a proceeding to subject it to the payment of James' debts whose property to that end, it was. He was, there-

*Margin notes:*

HACKLEY' s EX's
vs
SWIGERT.

The judgment in the Circuit Court

Property attached by a creditor by bill filed in Chancery is in the custody of the law and cannot be taken by execution and sold; and purchaser under execution acquires no title, but will be compelled to surrender the property to the order of the Chancellor. He is a *pendente lite* purchaser.

fore, guilty of contempt to the authority of the Court, in taking possession of and setting up claim to the boy, and refusing to surrender him to the order of the Chancellor, and the levy and sale, which were illegal, afforded no justification. And John Hackley and his executors, were all guilty of contempt, in causing the boy to be levied on and sold. It may, therefore, be well questioned, whether Swigert, so soon as he was advised of the condition of the boy, might not have abandoned his purchase, restored the boy to the custody of the law, from whence he was induced to take him by the wrongful intermedling of John Hackley, and his executors, and sued for his money paid in satisfaction of so much of the judgment against John.

One who procures a levy upon property in the custody of the law, is liable to a purchaser thereof, who is deprived of it by the law.

Be this as it may, we feel perfectly satisfied, that he might do so after he had been compelled to surrender him under a rule of Court, and failed in an action of detinue, to recover him, the executors having notice of the pendency of the action. And the more especially, when it appears that the surrender and sale was necessary to satisfy a ballance of even Lillard's decree, under whose attachment he was seized.

Assumpsit lies against a plaintiff in execution to recover back money advanced in the purchase of property under execution, where he had intermedled in procuring the levy and sale of property not subject. So it lies against a defendant who has caused a levy upon property not subject to satisfy a debt against himself in favor of the owner.

Besides, Swigert was a *pendente lite* purchaser, the boy was in litigation as James S'. Hackley's 'property, who was a party, and subject to the payment of his debts, and a decree had been rendered subjecting him at a prior term, and was final and conclusive, as well upon James as upon Swigert, who had acquired him *lis pendens*, and the Court could not, nor should it, if it could, have gone behind its former decree to relieve Swigert or John Hackley, who were intermediate intermedlers with the boy, any more than James, who was a party. They as *pendente lite* purchasers, were as much bound by the decree as he.

It was settled by this Court, in the case of *Sanders* vs *Hamilton*, (3 *Dana*, 552,) that *indebetatis* assumpsit would lie to recover back money from the plaintiff in the execution, advanced in the purchase of property under execution, which he, the plaintiff, had been instrumental in causing to be levied on and sold, though such recovery might have the effect to drive him to his motion to quash the return, that he might be restored to his remedy on his

execution for the amount so indorsed as a credit. If so, much more may he maintain this remedy against a defendant who has directed the levy, and been instrumental in the sale, to whose use, and in satisfaction of the execution against whom the money has been applied, and whose attitude under the execution has been in no wise changed by it. Indeed, it may be a matter of some question, whether in such a case, the action ought not to lie in favor of an innocent purchaser, against a defendant whose debt has been paid by the sale of the property of a stranger, or property not subject to the execution, without such interferance.

This has often been said to be an equitable action, in which when money has been paid, which *ex equo et bono*, should be refunded, it may be recovered back. And we perceive no good reason why it should be deemed necessary to resort to a Court of Equity, for the purpose of recovering money from a *defendant* in an execution, whose *debt* has been paid by the sale of a stranger's property, or property not subject to the levy. It is true the money has not been paid by the purchaser for his use, directly at his request, yet it has been paid under the coercive action of the law, brought about indirectly by his failure to pay his own debt, or to surrender property to pay it. In good conscience he should refund it, and as this is an equitable action, we can perceive no good reason why remedy may not be afforded in it as well as in a Court of Equity; especially as no steps are necessary to be taken, which require the extraordinary powers of a Chancellor to change or modify the return upon the execution. But if the action will not lie, when the defendant is passive, we cannot doubt that it may be maintained, and is the proper remedy, whenever he has interfered and been instrumental in causing the levy and sale.

We perceive nothing in the instructions of the Court, nor in his refusal to give the instructions asked, prejudicial to the plaintiff's in error, nor in the action of the Court, in admitting evidence, nor in any opinion expressed in the progress of the case. The judgment is therefore affirmed, with costs, &c.

*Kavanaugh* for plaintiffs: *Cates & Lindsey, and Morehead & Reed* for defendant.

---

HACKLEY'S EX'S.
*vs*
SWIGERT.

May not a stranger, whose property has been levied upon by an execution, maintain *indebitatis assumpsit* against a defendant in execution whose debt has been paid by a sale of his property.—Qu.