## Kane *et al. vs* Pilcher, &c.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Attached effects. Bankruptcy. Chancery practice.*

JUDGE SIMPSON delivered the opinion of the Court.

THE slave Jim having been levied on by a chancery attachment, was during the continuance of that levy in the custody of the law, and under the entire control of the Chanceller, and could not be levied on, or sold by

KANE et al.
vs
PILCHER, &c.

trol of the Chancellor.
—And not subject to levy and sale under execution: *Hackley's exec'rs. vs Swigert*, (5 B. Monroe.)

The execution of a bond for the delivery of property attached by the Chancellor, does not release it so as to make it subject to execution: *Bell vs Pearce*, (1 B. Monroe, 73.)

execution; as was decided by this Court, in the case of *Hackley's executor* vs *Swigert*, (5 B. Monroe, 86.)

That a bond had been executed by one of the defendants in the chancery suit for the delivery of the slave when required by the Chancellor, does not change the principle which prohibits a sale by execution of personal estate under attachment.

The equitable lien on the attached goods resulting to the complainant from his suit *in rem*, is not discharged by the execution of such a delivery bond: *Bell* vs *Pearce*, &c. (1 B. Monroe, 73.) The levy is not thereby suspended, but the defendant holds the property under the levy which still exists, as bailee or depository, subject to the Chancellor's order or decree. If it could be taken and sold by execution, the obligees in the bond might not have it in their power to comply with its conditions, the object of the suit in chancery might be defeated, or the whole liability, to the extent of the complainant's demand, be thrown on the security in the delivery bond. This, in effect, would render nugatory the provisions of the law authorizing the execution of such bonds. The defendant in the attachment being generally in embarrassed circumstances, would be unable to obtain security and execute a bond, if the law permitted the same property to be seized and sold by execution creditors as soon as it was out of the hands of the officer who levied the attachment. Nor is the rule on this subject changed by the fact that the property attached belonged to the defendant in the execution, and not to the debtor of the attaching creditor. The right to the property was contested in the suit in chancery. The complainant claiming it to be the property of the defendant, who was his debtor, the other defendant who was the defendant in the execution claiming it as his own, and denying that it was subject to the attachment. The property was in the custody of the law, and under the control of the Chancellor, and every reason which requires its exemption from execution in the one case, applies with equal force to the other. As, however, the execution creditors of the defendant to whom the property really belonged, were prevented by the pendency of the suit in chancery and the levy of

the attachment, from enforcing the collection of their executions by the sale of the attached goods, this impediment to their legal remedy, gave them a right to be made parties to the suit, and come into chancery to subject the property to the payment of their demands; and whenever creditors go into a Court of equity for this purpose, a lien on the property attached, is created in their favor, from the time they bring their claim before the Chancellor, in the event that the complainant in the attachments fails in the object of the suit. Spotts therefore acquired no title to the slave Jim, by his purchase under execution. To the amount of the execution paid by him for this slave, he had a right in equity to take the place of the creditor, and to avail himself of any remedy which the creditor had. His suit in chancery would consequently have given him a lien on the property attached, so far as he acquired an interest in the execution by the payment of the price bid by him for the slave Jim, were it not that previous to the institution of his suit in chancery, the defendant in the execution had become a bankrupt, and his right and title to the property in controversy had vested in his assignee. Spotts therefore was not entitled to any relief beyond that given to him, and the decree of the Chancellor is right so far as he is concerned.

As the slave had been sold under the decree of the Chancellor, and the money paid over to the complainants, and as the decree had been reversed by this Court, and the slave held not subject to the complainant's demand, it was right and proper that the Chancellor should order the repayment of the money, either to the defendant to whom the slave actually belonged, or to such person claiming the fund as in equity was entitled to it. A rule for this purpose on the complainants, was an appropriate remedy, either during the pendency of the suit, or even after its dismissal. And as the assignee has a right to defend all suits depending against the bankrupt at the time of his bankruptcy, and had in this character a claim to the proceeds of the sale of the slave, his motion to be made a party, was proper, and the complainants had no right to defeat the object of that motion by a dismissal of

The Chancellor has power even after the case is out of Court, to make all such orders and rules upon the parties as may be necessary to place them in possession of their right of which they may have been deprived by his precedent action in the case between them.

KANE *et al.*
*vs*
PILCHER, &c.

their suit before making him a party. It might not, how-ever, in this case, have been material whether the suit was dismissed or not before the assignee was made a party, if as we suppose, the assignee could have used the name of the bankrupt for his use and benefit, in a rule against the complainants, requiring them to pay over this money to him.

The limitation of two years for the commencement of suits by as-signees in bank-ruptcy does not apply to applica-tions to the chan-cellor for a rule for the refunding of monies which may have been improperly de-creed to others and the decree reversed.

The argument that no rule can be prosecuted in chan-cery after the parties are out of Court, is founded on a total misconception of chancery practice. Suppose a de-cree to be rendered against a defendant for a sum of money which is paid to the complainant, the decree is afterwards reversed on the ground that there is nothing due to the complainant, and his bill is directed to be dis-missed, which is done accordingly, would the defendant be driven to his action at law to recover the money which the complainant had wrongfully obtained? Would not the Chancellor, by rule, require its restitution? Has he not the power? Is it not his duty to relieve the parties from the effects of his own erroneous action? Can the complainant evade this power, by a dismissal of his suit, and an attempt to withdraw himself from the jurisdiction of the Chancellor? Certainly not, the well established chancery practice authorizes this proceeding by rule, to enforce in favor of either party any right growing out of the action of the Chancellor in the progress of the chan-cery suit.

Under the bank-rupt law, the as-signee had a right to prose-cute and defend all suits to which the bankrupt was a party, and to claim all his rights in view of his appointment as assignee; and a right to be made a party to any controversy in which as as-signee he might have an interest.

Nor is this case affected by the provision in the bank-rupt law, limiting the time in which suits are to be brought by, or against the assignee in bankruptcy to the period of two years. This suit was pending at the time of the bankruptcy. No suit was brought by the assignee. The limitation of two years has no application to suits pending at the time of bankruptcy. The bankrupt being a defendant to the suit, and having claimed the slave in controversy, his assignee was entitled to all his rights, and time would not certainly bar a claim which had been in litigation between the parties from the time the claim originated.

Wherefore, there being no error in the decree of the

Chancellor, it is affirmed on the appeal of Kane *et al.*, and also on the writ of error prosecuted by Spotts.

*Loughborough and Ballard* for appellant; *Pirtle and Crittenden* for appellees.