Read & Co. v. Sprague & McGown.

---

# READ & CO. *vs.* SPRAGUE & McGOWN.

[BILL IN EQUITY FOR MARSHALING ASSETS OF INSOLVENT PARTNERSHIP.]

1. *Conflicting liens of attachment at law and equitable writ of seizure.*—If a sheriff, having in his hands an attachment at law, receives a writ of seizure issued by the chancery court, before he has levied the attachment, he can only execute the chancery process, unless he can find property not embraced in the writ of seizure, on which to levy the attachment.

APPEAL from the Chancery Court of Tuskaloosa.
Heard before the Hon. JAMES B. CLARK.

THE material facts in this case are the following:

On the 30th September, 1850, George W. and Jehial Read, a mercantile firm in the city of New York, sued out an attachment, before the clerk of the circuit court of Tuskaloosa county, against the estate of George Sprague, as an absconding debtor. The attachment was returnable to the spring term of said circuit court, 1851; was placed in the hands of the sheriff on the same day it was issued, and was levied by him on the next day, to-wit, the 1st October, 1850, on a stock of goods belonging to said Sprague, which had been left by the latter in the care and custody of one Cummings, who was his clerk. Such proceedings were afterwards had in the attachment suit, that, at the fall term of said circuit court, 1851, the plaintiffs recovered a judgment against said Sprague for the amount of their debt, with damages and costs.

On the 1st October, 1850, Henry McGown filed a bill in equity, in the chancery court at Tuskaloosa, against said George Sprague; alleging, that he and said Sprague, prior to the 4th February, 1850, were partners in trade, doing business in the city of Tuskaloosa under the name and style of Sprague & McGown; that said partnership was dissolved on that day,—McGown selling out his entire interest in the firm to Sprague, and the latter agreeing to pay all the outstanding debts of the partnership; that Sprague brought out from New York, in the spring of 1850, after the dissolution, a new stock of goods, and mingled them with the old stock; that he continued the business in his own name, until within a month before the filing of the bill, when he left Tuskaloosa, ostensibly for the purpose of buying goods in New York; that, in fact, he absconded for the purpose of avoiding the payment of his debts; and that he left no property or effects, except the stock of goods on hand and the debts due to him from his customers, which the complainant believed to be insufficient to pay his debts and the debts of the late firm. The bill prayed that an attachment, or writ of seizure, might be issued; that all the goods, together with the accounts and other evidences of debt, might be seized, and held subject to the further order of

the court; that an account might be taken, to ascertain what portion of the goods on hand belonged to the late firm, and what debts due to said firm remained uncollected; that the goods of said firm, so far as they could be ascertained, with the uncollected debts due to the firm, might be set apart and appropriated to the payment of the partnership debts of said Sprague & McGown, and the balance to the individual debts of Sprague. On the filing of this bill, which was verified by affidavit, an attachment, or writ of seizure, was ordered to issue. The writ was issued on said 1st day of October, 1850, and was levied by the sheriff on the same day, and at the same time with the writ of attachment at the suit of Read & Co. By a subsequent order of the chancellor, the goods were sold as perishable property; the outstanding notes and accounts were collected, and the proceeds brought into court. At the July term, 1852, the chancellor dismissed McGown's bill, for want of equity; but, at the June term of the supreme court, 1853, his decree was reversed, and the cause remanded.—See the case reported in 23 Ala. 524.

On the 11th July, 1854, Read & Co. filed their bill or petition in said chancery court; alleging, in addition to the facts above stated, that executions on their judgment against Sprague had been returned "no property found;" that the goods belonging to the late firm of Sprague & McGown could not be identified and separated from the goods belonging to Sprague individually; that the lien of their attachment was superior to that of McGown, and to the liens of the other creditors who had intervened; and praying payment of their judgment out of the fund in court.

On the final hearing of the cause, the chancellor decided, that the levy of the attachments at law gave the attaching creditors no lien; that the partnership creditors were entitled to be first paid out of the fund in court, and that the surplus should be divided *pari passu*, among all the individual creditors of Sprague, without regard to the time when their respective attachments were levied. From this decree Read & Co. prosecute the present appeal, and assign said decree as error.

ORMOND & NICOLSON, with W. R. SMITH, for appellants.
E. W. PECK, contra.

A. J. WALKER, C. J.—After the issue of a valid writ of seizure from the chancery court, can an attachment, issued from, and returnable to a court of law, be levied upon the property embraced in the writ of seizure, and acquire a lien upon it? We concur with the chancellor in the decision of this question, expressed as the result of his learned and elaborate opinion, which has aided us very much in our investigations.

If property, ordered by a chancellor to be seized and taken into the custody of the court, can, after the reception of the precept by the sheriff, be subjected to the levy of process from a court of law, a conflict of authority would necessarily arise, of which there could be no reconcilement. It is an established principle with the chancery court, not to suffer its process, or the duty of an officer acting under it, to be examined by a court of law.—2 Story's Eq. Jur. § 891; 3 Wooddeson's Vin. Lec. 407. If a sheriff, having a writ issued from the chancery court, and an attachment from the circuit court, may execute them simultaneously upon the same property, it becomes unavoidable that the court of law shall pass upon the effect of the chancery process, the powers and duties of the officer under it, and the rights of the party suing it out. The exercise of such powers would necessarily be involved in the ascertainment of the officer's liability and duties, and the authority of the circuit court over the property, and the rights of the parties in the suit at law, as resulting from the attachment. If the chancellor should claim for his process a larger effect than the circuit court conceded, a conflict of jurisdiction and authority, with no umpire to adjust it, producing confusion and difficulty, bringing upon the officer of the law clashing obligations and commands of the two courts, would ensue. To avoid such consequences, the principle denying to a court of law the power of examining the process of the chancery court has been recognized and established. That principle, and the preservation of harmony between

the two jurisdictions, require a decision adverse to the
right of having a levy of an attachment from a court of
law upon property embraced in a writ of sezure from the
chancery court, simultaneously with the execution of that
writ.   If the sheriff cannot make a levy of the attach-
ment at the same time with the execution of the writ of
seizure, it follows that, when he has both in his hands at
the same time, he must execute the latter, and leave the
former without a levy, unless he can find property not
embraced in the writ of seizure.

A writ of sequestration authorizes commissioners to
take possession of a defendant's property.   Thus far
there is a striking analogy between the writ of sequestra-
tion and the writ of seizure before us.   The two differ as
to the purposes of their issue, and as to the persons by
whom they are to be executed.   They agree in requiring
the property to be taken into possession for the court,
and that the property when so taken into possession is in
the custody of the court.   The law fixing the time for
the operation and effect of the writ of sequestration,
seems, therefore, applicable to the writ of seizure.   The
rule with regard to a writ of sequestration is, that it
" binds from the time of awarding it, and not from the
time of executing it, or of its being laid on by the com-
missioners."—Burdett v. Rockley, 1 Vern. 58; 2 Dan.
Ch. Pl. and Pr. 1268.   The rule with regard to receivers,
who are appointed to take possession of property, is the
same.—3 Dan. Ch. Pl. and Pr. 1983–1984; Mann v. Penty,
2 Sanf. Ch. 257, 272; Edwards on Receivers, (second ed.)
98–99; Rutler v. Tallis, 5 Sanf. Sup. Ct. R. 610; West
v. Fraser, ib. 653.   The analogy drawn from the appoint-
ment of receivers, however, is not so clear and complete, be-
cause the appointment operates a transfer of the property.

This case does not require us to go so far as the author-
ities in reference to writs of sequestration would lead us,
and to hold that the writ of seizure was operative from
the time it was awarded.   We meet the question belong-
ing to the case by deciding, that it had a controlling
operation from the time of its reception by the sheriff;
and we limit our decision to the precise case presented,

leaving the question of the earlier operation of the writ for consideration when it arises.

Another argument in support of our conclusion is afforded by the doctrine of the chancery court, that it will not permit any interference with property in its custody without its consent.—Wiswall v. Sampson, 14 How. 52, 65; Nooe v. Gibson, 7 Paige, 513; Hackley v. Swigert, 5 B. Mon. 86; Kane v. Pilcher, 7 B. Mon. 651. Even the pre-existing lien of a judgment on real estate cannot, it is said, be enforced after it has passed into the control of the chancery court, without its consent.—Wiswall v. Sampson, *supra.* The remedy of all persons whose rights are injuriously affected, according to the last authority cited, is to apply to the chancery court for a remedy, or for permission to proceed at law.

Now, the writ of seizure from the chancery court required the sheriff to take the property into his possession. The moment he did so, the property was in the custody of the law. His act of taking into possession placed the property in the custody of the court. The act which in its performance places the property in the custody of the chancellor, cannot also destroy or prevent that custody, so far as the levy of an attachment is concerned. He cannot qualify and restrict the custody which he takes for the court, with the levy of the attachment, unless he had the property under his control; and the moment he acquired that control, it was in the custody of the court. The correctness of the court's action, in taking possession of the individual effects of Sprague, acquired after the dissolution of his partnership with McGown, is not before us. The court took the property under its jurisdiction, and has by its orders and decrees exercised authority over it; and its acts in those particulars are conclusive upon the parties, except upon a direct appeal.

The pleadings in this case treat the writ of seizure as a valid process issued by the chancellor, and it is our duty so to regard it. We do not look behind the pleadings, to inquire into the regularity of the issue of the process.

The decree of the court below is affirmed.