THE FIRST NATIONAL BANK OF OSWEGO, Appellant, *v.* JOHN DUNN et al.

THE SECOND NATIONAL BANK OF OSWEGO, Respondent, *v.* JOHN DUNN.

Where a chattel has been replevied, it may not, while it is in the possession of the sheriff, or, *it seems,* while in the possession of the plaintiff awaiting the result of the action, be levied upon by virtue of an execution against the defendant in said action. The judgment creditor can only claim through the title of his debtor, and the property having been lawfully removed from the possession of the latter, and being held in the custody of the law for final adjudication, he cannot disturb that custody, but is confined to such remedy as will not interfere with it.

*Dunlop* v. *P. F. Ins. Co.* (74 N. Y. 145), *Burkle* v. *Luce* (1 id. 558), distinguished.

*It seems* that the execution creditor in such case may proceed in equity, making all the rival claimants parties, and so determine in one action the whole controversy.

*F. N. Bank* v. *Dunn ; S. N. Bank* v. *Dunn* (29 Hun, 529), reversed.

(Argued October 7, 1884; decided October 28, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made April 19, 1883, which reversed an order of Special Term, staying proceedings upon an execution issued upon a judgment recovered in the action second above entitled, and setting aside a levy made by

the sheriff of Oswego county in virtue of such execution. (Reported below, 29 Hun, 529.)

On the 7th day of January, 1882, John Dunn made a general assignment for the benefit of his creditors, to John Dorsey, Jr., his book-keeper and clerk, who took possession of the assigned property, consisting among other things of a malthouse in which were eighteen to twenty thousand bushels of malt in bulk. Two days later, viz., January 9, 1882, the First National Bank brought replevin for ten thousand bushels of said malt, against Dunn and Dorsey, which is the action first above entitled. The plaintiff in that action claimed title under warehouse receipts, executed to it by Dunn, on the 13th December, 1881. Upon the mandate in that action, the sheriff of Oswego seized the ten thousand bushels of malt and kept possession until the 13th of January, 1882, when (as no bond had been given by the defendants and time therefor had expired) the sheriff went to the president of the First National Bank at his banking rooms and told him he had come to deliver the malt named in the replevin papers, and that he did then and there deliver it. The president requested the sheriff to separate the ten thousand bushels and to deliver it at a designated place. On the 13th of January, 1882, the Second National Bank recovered a judgment against John Dunn for $15,415.23, besides costs, and forthwith issued an execution to the sheriff of Oswego county, who was engaged in separating the malt for the purpose of delivering as requested, he at once levied on the malt in question, and other property of the assignor and judgment debtor. On the 17th of January, 1882, the First National Bank indemnified the sheriff against the claim of the Second National Bank

*Louis Marshall* for appellant. The Supreme Court has power to set aside a levy when wrongfully or illegally made. (*Davis* v. *Tiffany*, 1 Hill, 642 ; *Ferris* v. *Crawford*, 2 Denio, 604 ; *McLean* v. *Tompkins*, 18 Abb. Pr. 24.) Strangers whose rights are affected by a judgment or proceedings under it may make such a motion. (*Dwight's Case*, 15 Abb. Pr. 259 ; *Gould*

*v. Mortimer,* 16 Abb. 448; 26 How. 167; *Lowber* v. *Mayor, etc.,* 9 Abb. 325; *Parent* v. *Kellogg,* 1 How. 70; *Bonesteel* v. *Orvis,* 23 Wis. 506; *Pitt* v. *McGee,* 23 Ill. 210; *Robinson* v. *Atlantic & Gt. West. R. R. Co.,* 66 Penn. St. 160; *Jones* v. *Williams,* 2 Swan [Tenn.], 105; *Linn* v. *Hamilton,* 34 N. J. Law, 305.) Property taken under replevin, either before or after surrender to the plaintiff in the action, cannot be retaken from such plaintiff or the sheriff on execution against one of the defendants in the replevin suit. (*Acer* v. *White,* 25 Wend. 614–615; 2 Dallas, 689; 1 Br. Ch. 427; *Burckle* v. *Luce,* 1 N. Y. 163–171; *Milliken* v. *Selye,* 6 Hill, 623–4; Co. Litt. 476; Willes, 136; Comyn's Landl. and Ten. 377; *Alexander* v. *Mahon,* 11 Johns. 185–6; *Morris* v. *De Witt,* 5 Wend. 71; *Seymour* v. *Newton,* 17 Hun, 30–32; *Hartwell* v. *Bissell,* 17 Johns. 128; Wells on Replevin, §§ 256, 257, 258, 472, 479 and 480 and cases cited; Herman on Executions, 286; Freeman on Executions, § 135; *Rives* v. *Wilborne,* 6 Ala. 46; *Goodheart* v. *Bowen,* 2 Brad. [Ill.] 578; *Watkins* v. *Page,* 2 Wis. 92; *Rhines* v. *Phelps,* 3 Gilm. [Ill.] 455; *Smith* v. *McGregor,* 10 Ohio, 461; *Jennings* v. *Johnson,* 17 Ohio [First Series, Griswold], 156; *Rives* v. *Wilborne,* 6 Ala. [Holds.] 46; Wells on Replevin, §§ 256, 257; *Seymour* v. *Newton,* 17 Hun, 30–32.) Dunn had no leviable interest in the malt in question. The assignment vested the legal title in Dorsey. (*Williams* v. *Ingersoll,* 89 N. Y. 523; 3 R. S. [Throop's ed.] 2259; *F. & M. Bank* v. *Logan,* 74 N. Y. 579; *Bank of Rochester* v. *Jones,* 4 id. 597; *Commercial Bk.* v. *Pfeiffer,* 22 Hun, 334; *City Bk.* v. *R. W. & O. R. R. Co.,* 44 N. Y. 136; *First National Bank* v. *Kelly,* 57 id. 34; *Hoyt* v. *Hartford Fire Ins. Co.,* 26 Hun, 416; *Mattison* v. *Baucus,* 1 N. Y. 295; *Hull* v. *Connelly,* 11 id. 501; *Farmers' Bk.* v. *Cowan,* 2 Abb. Ct. of App. Dec. 88; 2 Keyes, 217; *Short* v. *Spring,* 90 N. Y. 538, 544–5.) The First National Bank, by virtue of the warehouse receipt, acquired the absolute right to the property in question and the right to its possession by such ownership and bailment. (3 R. S. [Throop's ed.] 2259; *McComber* v. *Spader,* 1 Hun, 193; *Yenni* v. *McNamee,* 45 N. Y. 615, 619; *Gibson* v. *Stevens,*

8 How. [U. S.] 384, p. 620 ; *F. & M. Bk. of Buffalo* v. *Lang*, 87 N. Y. 209 ; *Parshall* v. *Eggart*, 54 id. 18 ; *Hoyt* v. *Hartford Fire Ins. Co.*, 26 Hun, 416, 418 ; *First Nat. Bk.* v. *Kelly*, 57 N. Y. 34 ; *Gibson* v. *Stevens*, 8 How. [U. S.] 384 ; *Kimberly* v. *Patchen*, 19 N. Y. 330 ; *Russell* v. *Carrington*, 42 id. 118 ; *Crofoot* v. *Bennington*, 2 id. 358 ; *Shepardson* v. *Cary*, 29 Wis. 34, 43–4 ; *De Wolf* v. *Gardner*, 12 Cush. 19 ; *Gibson* v. *Stevens*, 8 How. 384 ; *Stewart* v. *Beale*, 7 Hun, 405 ; 68 N. Y. 629 ; *Kippendorf* v. *Hyde*, 110 U. S. 276 ; *Buck* v. *Coldbath*, 3 Wall. 334.) The original debt from Dunn to the Second National Bank and all equities founded thereon were extinguished by the novation of January 14, 1882, and the creation of a new obligation dating from that time. (Bouvier's Institutes, title Novation ; *Beach* v. *Endress*, 51 Barb. 570, 578 ; *Kent* v. *Reynolds*, 8 Hun, 559, 561.) It was competent for the vendee of property to act as bailee for the vendor, and the possession of Dunn was the possession of the First National Bank, and rendered the transaction good as a sale or pledge against creditors as well as himself. (Benj. on Sales [2d ed.], Bk. 5, p. 548, § 807 ; *Reeves* v. *Cooper*, 5 Bing. N. C. 136 ; *Marvin* v. *Wallace*, 8 Ell., S. & B. 726 ; *Thayer* v. *Dwight*, 104 Mass. 254 ; Story on Bailments, §§ 58, 299 ; *Melomber* v. *Parker*, 4 Pick. 497 ; *Hayes* v. *Riddle*, 1 Sand. 248 ; *F. & M. Bk.* v. *Logan*, 74 N. Y. 585, and causes under previous point.) The fact that the malt was not designated as separate, or as separated from a mass, cannot aid the Second National Bank in a contest, even though, in fact, mixed with other malt. (*Kimberly* v. *Patchin*, 19 N. Y. 350 ; *Russell* v. *Carrington*, 42 id. 118.)

*S. C. Huntington* for respondent. The subsequent delivery (if any) of the malt by the sheriff under the replevin proceedings to the First National Bank, the plaintiff in replevin, did not waive, vacate or annul such levy, or the lien thereby acquired. (*Lockwood* v. *Perry*, 9 Metc. [Mass.] 440 ; *Burkle* v. *Luce*, 1 Comst. [1 N. Y.] 163 ; Code of Civ. Pro., §§ 1699, 1708.) As the Second National Bank was not a party to, and,

hence, had no legal control over the action and proceeding in replevin, it is not barred or bound or estopped thereby. Only the parties thereto can legally receive benefit or injury therefrom. (Code of Civ. Pro., §§ 1699, 1708; *Lockwood* v. *Perry*, 9 Metc. 440.) The execution-creditor not being a party to the replevin suit cannot control the undertaking executed by the plaintiff in replevin, or derive any benefit therefrom. (Code of Civ. Pro., §§ 1699, 1708; 9 Metc. [Mass.] 440.) The execution of the writ of replevin did not vest the title in the plaintiff in replevin, or annul the levy, or take away the power of sale. This can only be done when a third person, not a party to the replevin suit, can have the benefit of the replevin bond. (Code of Civ. Pro., §§ 1699, 1708; *Lockwood* v. *Perry*, 9 Metc. [Mass.] 440; *Burkle* v. *Luce*, 1 Comst. 163; *Buck* v. *Coldbath*, 3 Wall. [U. S.] 334, 345–6; Wells on Replevin, §§ 276, 280–1; *Slocum* v. *Mayberry*, 2 Wheat. 2; *Samuel* v. *Angew*, 80 Ill. 554; Wells on Replevin, § 268 *and note;* §§ 245, 248, 258, 261, 264, 266; *Breen* v. *Hubbard et al.,* 4 Cush. [Mass.] 85; *Stimpson* v. *Reynolds*, 14 Barb. 506; *Otis* v. *Williams et al.,* 70 N. Y. 208; *Lovett et al.* v. *Burkhardt*, 44 Penn. St. 173–4; *Burkle* v. *Luce*, 1 Comst. 163; *Lockwood* v. *Perry*, 9 Metc. 444; *Morris* v. *De Witt*, 5 Wend. 71; *Perry* v. *Richardson*, 9 Gray, 216; *Benson* v. *Berry*, 55 Barb. 621; 4 Hun, 732; *Acker* v. *White*, 25 Wend. 614.) After the malt had been (as it has) delivered by the sheriff to the plaintiff in replevin it is not in the custody of the law as to the Second National Bank; the lien of the sheriff under the execution is good, and the sheriff has a legal right to sell, and should be permitted to sell thereon. (*Hagon* v. *Duel*, 24 Ark. 216; *Sanborn* v. *Leavitt*, 43 N. H. 473; *Shipman* v. *Clark*, 4 Den. 446; *Thomas* v. *McGowen*, 13 Wend. 256; *Foster* v. *Pettibone*, 20 Barb. 350, 359; *Ilsley* v. *Stubbs*, 5 Mass. 280; *Hyatt* v. *Wood*, 4 Johns. 150; *Powell* v. *Bradley & Co.*, 9 Gill. & Johns. 220, 250, 279, 280; *Clark* v. *West*, 23 Mich. 242; *Smith* v. *Snyder*, 15 Wend. 324; *Haskins* v. *Kelley*, 1 Abb. [N. S.] 63; *Rinchey* v. *Stryker*, 28 N. Y. 45; *Manning, Bowman & Co.* v. *Keenan et al.*, 73 id. 45; *Carr, Assignee*,

v. *Van Hoesen, Sheriff*, 26 Hun, 316; 14 Week. Dig. 110; *Frost* v. *Mott*, 34 N. Y. 253, 255; *Stimpson* v. *Reynolds*, 14 Barb. 506; *Rogers* v. *Weir*, 34 N. Y. 463, 466; *Farmers and Mechanics' National Bank of Buffalo* v. *Lang*, 87 id. 209, 214, 215; *Foster* v. *Pettibone*, 20 Barb. 350.) If the Second National Bank have no right to retain the levy or make the sale, the First National Bank has a full, adequate and complete remedy at law by action of trover, trespass or replevin. Hence, relief by injunction cannot be had. (*Marshall* v. *Peters*, 12 How. Pr. 218.) An order can only be obtained staying proceedings in an action by a party to the action against the party to the same action. (*Watts* v. *Rogers*, 2 Abb. 261, 263, 266; *Grant* v. *Quick*, 5 Sandf. 612.) The First National Bank was not a party to the motion to punish the sheriff as for a contempt, and hence is not bound or estopped by it. (*Veeder* v. *Barker*, 83 N. Y. 156, 163; *Riggs* v. *Purcell*, 74 id. 370; *Bissell* v. *Kellogg*, 65 id. 432; *S. C.*, 60 Barb. 617; New Rules, 180, 181; *Easton* v. *Pickersgill*, 8 Week. Dig. 37; 75 N. Y. 599; *Matter of Livingston*, 34 id. 555.) If the receipt operate as a pledge, the sheriff might, by virtue of the execution, sell the interest of the pledgor. (*Farmers and Mechanics' National Bank of Buffalo* v. *Lang*, 87 N. Y. 214; *Yenni* v. *McNamee*, 45 id. 614.)

Finch, J. If the General Term were right in sustaining the levy upon the property held under the writ of replevin, the sheriff occupies a very awkward and anomalous position, and the law is made to demand a seeming impossibility. The sheriff took possession of the malt in obedience to process requiring him to take that specific property. The defendants in replevin, Dunn and Dorsey, not giving a bond for the return of the property within the prescribed three days, it became the imperative duty of the sheriff to deliver such property to the First National Bank of Oswego, the plaintiff in the action. While preparing to make such delivery, but before it had been actually accomplished, the Second National Bank of Oswego issued to him an execution against Dunn, and required him to

levy upon the same property.   He made the levy, and so found himself at one and the same instant required to deliver up the malt on one mandate and retain and sell it on another.   He cannot do both.   The two duties, each equally imperative, are utterly inconsistent, and the performance of either inevitably involves the non performance of the other.   The difficulty, too, does not end with the sheriff, but extends to the plaintiff in replevin.   He sues Dunn to recover the identical property, claiming to be its owner, and obtains for the safety of his title a lawful possession.   But that safety is weak and brittle if Dunn can confess a judgment to a creditor who, alleging his debtor's ownership, can again put in jeopardy the possession of the property.   The law compels the plaintiff in the replevin, as the price of his temporary possession, to give a bond for the return of the property, if such return is in the end adjudged, and yet, if levies may be made in behalf of creditors, the law prevents the very return which it at the same time requires. It was a similar inconsistency to which the Federal court called attention in *Hagan* v. *Lucas* (10 Pet. 404).   Justice McLean said : " If the property be liable to execution a levy must always produce a forfeiture of the bond.   For a levy takes the property out of the possession of the claimant and renders the performance of his bond impossible.   Can a result so repugnant to equity and propriety as this be sanctioned ?   Is the law so inconsistent as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time exact a penalty for the failure ? "

From these inconsistencies there must be some avenue of escape.   The right of the Second National Bank, as a judgment creditor of Dunn, to contest the validity of his assignment to Dorsey, and the alleged title of the First National Bank by virtue of its warehouse receipt, is undoubted.   Claiming the malt to be in truth the property of Dunn, it may levy upon it and seek to maintain its hold, unless met by the obstruction of an existing custody of the law.   That obstruction the appellant interposes, and asserts it to be effectual whether at the moment of the attempted levy the malt was in the cus-

tody of the officer, or had been delivered to the temporary possession of the bank during the pendency of its proceedings in replevin. The precise question does not seem to have been decided by any court of last resort, but the authorities approach it from several directions, and indicate the principles which should govern its determination. The old action of replevin and its modern substitute are alike in the nature of proceedings *in rem.* The court fastens upon the identical property, and holds it subject to its own ultimate disposition. If by its own rules it cannot hold the *res* against other process which it has power to control, the action loses its character and becomes merely one for damages. In *Hagan* v. *Lucas (supra)*, it was ruled that the property taken on the writ is in the custody of the law, both while held by the officer, and after delivery to the plaintiff, and so remains during the pendency of the action awaiting the final disposition of the court. And it was further said that this custody could not be disturbed by any process, and especially not by that emanating from another jurisdiction. This case, and its doctrine as stated, were approved by the same court in a very recent decision. (*Covell* v. *Hyman*, 111 U. S. 176.) It is true, as the General Term say, that the case cited was one in which the writ under which a bond was given for the return of the property was issued from the State court, while the disturbing execution came from the Federal court, and the avoidance of a conflict of jurisdiction was assigned as the principal ground of decision. But at the foundation of that conflict was the inconsistency of a legal requirement that an officer should hold the property for one purpose and yet be compelled to surrender it for another. That the hostile mandates came from different courts only emphasized the inconsistency. ·

It was early held, and has been steadily maintained, that property levied upon by an officer when found in and taken from the possession of the defendant in the execution, cannot be replevied unless in a case where the taking was tortious, and the officer liable in trespass. (*Thompson* v. *Button*, 14 Johns. 86; *Pangburn* v. *Patridge*, 7 id. 142.) And that

illustrates the difference between a taking on execution and on a writ of replevin.  In the former case he is required to take only the property of the debtor, and is a trespasser if he takes that of a stranger ; but in the latter he is required to take certain specific property, and is not a trespasser, and cannot be sued for taking it.  His possession under the writ and his power to obey it are thus perfectly protected, and his taking is entirely unaffected by the question of ownership.

In *Acker* v. *White* (25 Wend. 614), the property was levied upon in 1837 as the property of Jessup.  Thereafter White took out a writ of replevin and gave the necessary bond, but left the property in the possession of Jessup.  In 1839 Acker, as sheriff, levied upon the same property, while the replevin suit remained undecided.  White recovered the property from Acker, the court saying that " the bond was substituted for the goods,'' and "assuming that the plaintiff acquired, by virtue of the bond and replevin, the property in question, then, though it still continued in the possession of Jessup, it would not be subject to execution against him."

The case of *Burkle* v. *Luce* (1 Comst. 163), cited by the General Term, decided only that where the replevin suit had abated, and could not be revived because of the death of the plaintiff, the levy made by the sheriff, from whose possession the replevin had taken the property, at once revived, and he could re-take it from the possession of the plaintiff's executors.  There the replevin was at an end, and the custody of the law discharged.  We fail to find anywhere authority for the doctrine that by the issue of an execution a sheriff holding property under a writ of replevin can be forced to disobey the mandate of the writ.  The case of successive executions issued to the same officer stands upon different principles.  Even there, it is said, that having levied under the first execution, he cannot and does not levy under the second, but its issue to him operates as a constructive levy.  (*Seymour* v. *Newton*, 17 Hun, 30.)  But in such case he is not charged with inconsistent duties, or his lawful possession disturbed.  The later executions in no manner alter or interfere with his duty under the

first.   He can obey all the mandates, and is not driven to disobey any, but an execution following a writ of replevin sets the officer at once at war with himself.

The Code has made provision for the case of a claimant whose claim existed prior to the replevin (§ 1709), but has made none for a case where, as here, the creditor's judgment was obtained and his execution issued after the replevin.   In such case he can only claim through the title of the debtor.   If there be none in him, there can be no right of the creditor.   If that title is already in dispute, he must abide its issue ; or, if need be, in a lawful manner take part in its determination.   If the property be lawfully removed from the possession of his debtor, and held by the law for a final adjudication, he cannot disturb that custody, or invade it with inconsistent process.   He must take such remedy as will not interfere with the custody lawfully acquired and maintained.   Cases of attachment furnish an illustration.   The duty of an officer to whom the warrant has been issued is to take and retain the property till final judgment and execution.   Hence it is said that property *in custodia legis* cannot be attached.   (Drake on Attachments, § 251.)   And the case of *Read* v. *Sprague*, 34 Ala. 101, is cited. There an attachment was placed in the hands of the sheriff, and before its levy a writ of seizure from a court of chancery was issued to the same officer.   He tried to execute both.   Of course he could not, and the court held that since he could not execute the attachment except by taking the property, and the moment he took it the property was in the custody of the court under the writ of seizure, therefore the attachment could not be levied.   If the courts of this State have modified this rule, it is only in a manner which preserves its substantial elements. In *Dunlop* v. *Patterson Fire Insurance Co.* (74 N. Y. 145), money deposited with the clerk of a court, in lieu of an undertaking on appeal, was held liable to an attachment in an action by a third person against the depositor.   But this went upon the ground that the attachment operated not upon the money itself, but upon the intangible right of the depositor to so much of it as might remain after the exigencies of the appeal were

satisfied ; and the court carefully and sedulously guarded itself against a construction that would interfere with the custody of the fund.

The creditor, in the present case, must pursue a remedy consistent with the sheriff's duty under the replevin, and with the hold which the law has upon the property. The issue of his execution gave him a general lien against the property of his debtor. He meets with an obstruction to his levy. We see no reason why. he may not proceed in equity, making all the rival claimants parties, preventing if need be a transfer of the property by the plaintiff in replevin, avoiding a multiplicity of suits, and so determining in one action the whole controversy. We think the Special Term was right in setting aside the levy.

The order of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur, except RUGER, Ch. J., taking no part.

Ordered accordingly.