## NATIONAL PARK BANK, RESPONDENT, *v.* WARREN N. GODDARD AND OTHERS, APPELLANTS.

*Equity — irreparable mischief and vexatious litigation — action by one having a general lien upon goods against parties having liens upon different portions — directions to a receiver as to a sale — possession of property by a receiver.*

A bank, which was a creditor of certain manufacturers of clothing, had caused a levy to be made, under an attachment, upon their stock in trade. A number of other creditors of the manufacturers then began actions of replevin. It appeared that, in such actions, the claims of some creditors arose out of a sale of cloth; others had sold buttons, others linings and still others trimmings. Some of

the stock was cloth in the piece. There were also garments in process of manufacture. Each of these creditors based his action upon fraud, and he claimed to rescind the sale and to retake his property wherever and in whatever form he could find it.

In an equitable action brought by the bank against all these claimants to protect its lien, and to secure an adjudication in one suit upon the conflicting claims:

*Held*, that the action was maintainable, and the appointment of a receiver therein was proper.

That, upon the facts above stated, the bank had no adequate remedy at law, and that equity would intervene to prevent irreparable mischief or vexatious litigation

That the bank, by virtue of its general lien under the attachment, and a levy thereunder, might proceed, making the rival claimants parties, notwithstanding their replevin actions.

That said parties to the replevin actions were not, by this action on the part of the bank, deprived of their right to a trial by jury, since, if they had such a right, issues could be framed and the right be preserved.

That, even though one or two of the parties bringing replevin actions claimed therein goods which were in the original packages or pieces, the court would not restrain all other claimants and allow the particular actions of such parties to proceed.

The court, upon an application by a receiver of the manufacturers for instructions how to proceed, directed him to sell the manufactured goods and hold the proceeds subject to its order; to complete the clothing in process of manufacture; to sell it and hold the proceeds; to store the piece-goods; to settle, in his discretion, with workmen and others claiming liens; to keep by itself the proceeds of the sale of each lot of goods replevied, and to collect unpaid claims due said manufacturers.

*Held*, that the form of the order was correct.

That the court, even if it were possible so to do, would not compel the receiver to ascertain to whom each parcel of property belonged, and to restore it to the person who sold it to the manufacturers.

That the court was bound to keep possession of the property for the benefit of all creditors, and that if any one was entitled to certain goods, he would be entitled to payment, by the receiver, of the sum for which the particular goods were sold by him.

APPEAL by the defendants, Emil Oelbermann and Louis F. Dommerich, composing the firm of Oelbermann, Dommerich & Co., George W. Bramhall and Carl R. Hieronymus, composing the firm of Bramhall Bros. & Co., and James Talcott, from an order entered in the office of the clerk of the county of New York May 23, 1891, granting an injunction and appointing a receiver, and by the same and other defendants from an order in a similar action granting an injunction and other relief, entered in said clerk's office September 22, 1891.

*E. F Dwight,* for the appellant Oelbermann and others.

*Gibson Putzel,* for the Raritan Woolen Mills and others, appellants.

*Benno Loewy,* for the appellant Haas and others.

*Butler, Stillman & Hubbard,* for the appellant Julliard and others.

*Otto Horwitz,* for the respondent.

VAN BRUNT, P. J. :

Levy Bros. & Co. were a limited partnership engaged in the manufacture and sale of clothing in New York, and being indebted to the plaintiff in a large sum of money their property was attached at the suit of the plaintiff, by the sheriff, who took into his possession their stock of goods and some other property. At that time the defendants herein, other than the Levys and the coroner, claimed to be creditors of the insolvent firm for goods sold and delivered, but their claims had not matured.

As soon as the sheriff had levied upon and taken possession of the firm's property these creditors, claiming that the goods sold by them to the Levys were obtained from them by fraud, assumed to rescind the sales and commenced actions in replevin to recover the goods they had respectively sold. The coroner thereupon took the goods out of the sheriff's possession. Some forty or fifty different actions of this nature were thus commenced.

The goods sought to be replevied were cloth, linings, trimmings and other materials which had been sold, by the plaintiffs in the replevin suits, to the Levys, and which had, to a great extent, been made up by the Levys into clothing; the cloth bought from one merchant being combined with the linings bought from another, and the trimmings furnished by another to form the garment as it existed at the time of the levy on the attachment by the sheriff. Each plaintiff in the replevin suits claimed certain goods in whatever shape he could find them, whether in the piece or made up into garments. Entire garments were claimed by the merchant who sold the buttons or linings, or who sold the cloth or furnished other parts of the material; and at the time that this action was commenced were in the act of seizing upon and taking away property,

some of which had formerly belonged to them and some of which they had never owned; the claim of the plaintiffs in the replevin suits being that these goods having been obtained by fraud they had the right to follow them in any form that it might assume through the interference of others. The respondent thereupon commenced this action for the protection of its lien under its attachment, and to procure in one suit a determination of all the adverse and conflicting claims upon the attached property, and for an injunction and a receiver, averring that it was necessary for the protection of its lien that the attached property be held or sold for the benefit of all the lienors or claimants thereto. An order to show cause why a receiver should not be appointed having been made, an order was made temporarily enjoining the defendants from pursuing their actions in replevin, and the court appointed a receiver, two orders having been entered in respect thereto, and from these orders these appeals are taken.

It is urged, upon the part of the appellants, that the complaint does not disclose equity sufficient to authorize the relief granted by the order, and that a multiplicity of suits is not alone a sufficient ground for the interposition of a court of equity, but that there must be some additional equity of which the plaintiff is unable to avail itself at law, or which is a distinct ground of equitable cognizance, such as accident, mistake, fraud or discovery; and that in any event it must be shown that there is a common right at stake among the defendants or a common property involved in dispute.

Undoubtedly a part of this proposition is well founded, but the limitation of the interference of equity to cases of accident, mistake, fraud or discovery would seem to deprive that branch of jurisprudence of the most important part of its jurisdiction. And in the consideration of the questions presented upon this appeal it may be proper to call attention to the manner in which equitable interference has been called into existence by the necessities of the case, the cardinal principle being that the party had no adequate remedy at law, which is the foundation of all equitable interference.

In order to obviate many defects in proceedings at law the remedy by interpleader was introduced into equity, but as it left many cases of hardship unprovided for, bills *quia timet* obtained, which were essentially in their nature writs of prevention, and,

therefore, instituted before the wrong has been or is actually being suffered. But as these did not afford relief, there being many cases where injury was being suffered for which the law afforded no adequate protection, as to prevent waste or destruction or deterioration of property *pendente lite,* or to prevent irreparable mischief (bills of peace and writs of injunction were resorted to). The grounds upon which the jurisdiction of courts of equity in proceedings of this character was founded arose from their ability to give a more complete and perfect remedy than is obtainable at law, in order to prevent irreparable mischief, or to suppress oppressive and vexatious litigations. In fact, equity has always intervened where the law cannot afford adequate relief.

The question arises in the case at bar whether the plaintiff has brought itself within the jurisdiction of a court of equity by the facts developed upon the hearing of these motions. It is urged that the plaintff has no standing in court as against these parties seizing these goods under their replevin writs. But it was held in the case of the *First National Bank of Oswego* v. *Dunn* (97 N. Y., 159), that an execution creditor, if he meets with an obstruction to his levy, may, because of his general lien, proceed in equity, making all the rival claimants parties, and prevent, if need be, the transfer of the property by the plaintiff in replevin, avoid a multiplicity of suits, and so determine in one action the whole controversy. In the case at bar the plaintiff had an actual lien upon the property, having levied thereon and being in possession of it. Its levy is obstructed by the various claimants of this property as represented in the replevin suits, and in some cases different claimants claiming different portions of the same piece of property. If these defendants are allowed to go on, a large portion of this property upon which the plaintiff has obtained its lien will be absolutely destroyed, and if it should finally succeed in the replevin actions, it will have but a barren victory. Therefore, it has brought this action in equity, making all the rival claimants parties, and claiming the right to prevent the transfer of the property by the plaintiffs in replevin, and also claiming to avoid a multiplicity of suits, precisely within the principle of the rule cited.

In this action the rights of all the parties can be protected, and the property or its proceeds preserved for the party who shall finally

be decided to be entitled to the same. Without elaborating the propositions heretofore referred to, it seems, from the facts disclosed by these papers, that, if ever there was a case in which a court of equity should intervene to prevent irreparable injury, it was under circumstances such as are disclosed in the case at bar.

The point made, that the parties in the replevin suits are by this means deprived of their right to a trial by jury, cannot have any force, because, if they are entitled, as matter of right, to a trial by jury, issues may be framed by which they may be able to have the benefit of that right. But we do not intend to intimate any opinion upon that subject, because it has become familiar law that even a replevin suit may become an action in equity by an order of interpleader.

Upon the whole case, therefore, we are of opinion that it was a wise exercise of the discretion of the court to prevent the dissipation of this property and to take possession of the same itself until the determination of these rival claims and the ascertainment of the rights and interests of each.

It is claimed by some of the appellants that their actions were brought for the recovery of goods which remained in the original packages, or in the original piece, and which were not either manufactured or in process of manufacture at the time of the issuance of the writs. There may be a few instances of that kind, but there is no sufficient reason why one or two suits should be allowed to progress if all the others are to be enjoined.

The orders appealed from should, therefore, be affirmed, with ten dollars costs and disbursements.

BARRETT, J., concurred.

