(95 Misc. Rep. 484)

### KURZWEIL v. STORY & CLARK PIANO CO.

### BLUMGARTEN v. MASON & HAMLIN CO.

(City Court of New York, Trial Term.   May 24, 1916.)

1. REPLEVIN ⬿1—COMMON LAW.

At common law the party claiming the right to the possession of personalty could enforce his claim by no process other than the writ of replevin, which issued out of chancery, commanding the sheriff to deliver property to the owner, and afterwards do justice in respect to the matter in his own county court.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 1; Dec. Dig. ⬿1.]

2. REPLEVIN ⬿6—COMMON LAW.

Originally at common law the action of replevin lay to recover the possession of goods illegally distrained by a landlord.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 20; Dec. Dig. ⬿6.]

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. JUDGMENT ⊕⟿350—VACATION FOR WANT OF SERVICE.

Where judgments are entered in ordinary actions in rem without service of summons, the court has no jurisdiction over the parties or subject-matter, and the defendants have the right to vacate and set aside the judgments on motion, for irregularity, error in fact, or want of jurisdiction; and testimony can be taken in another action, where such a judgment is set up as estoppel, on the question of nonservice.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 686, 688, 690; Dec. Dig. ⊕⟿350.]

4. REPLEVIN ⊕⟿18—JURISDICTION—STATUTE.

Under Code Civ. Proc. § 1693, touching jurisdiction when replevin precedes summons, in such case the court does not lose jurisdiction over the parties or the subject-matter for failure to serve summons, as upon execution of the writ of replevin the court acquires jurisdiction for all purposes.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 118; Dec. Dig. ⊕⟿18.]

5. REPLEVIN ⊕⟿40—SEIZURE OF CHATTELS.

The seizure of chattels by the sheriff under writ of replevin is regarded, first, as equivalent to the granting of a provisional remedy to give jurisdiction to the court and enable it to control the subsequent proceedings of the action; and, second, as equivalent to the commencement of the action to determine whether the plaintiff is entitled to maintain it, or the defendant is liable thereto.

[Ed. Note.—For other cases, see Replevin, Dec. Dig. ⊕⟿40.]

6. REPLEVIN ⊕⟿18—JURISDICTION—STATUTE.

Where the sheriff, in actions of replevin, complied with Code Civ. Proc. § 1700, directing how chattels are to be replevied, the court had complete jurisdiction, enabling it to control the subsequent proceedings in the action, being equivalent to commencement of the action to determine whether plaintiff was entitled to maintain it, or defendant liable thereto.

[Ed. Note.—For other cases, see. Replevin, Cent. Dig. § 118; Dec. Dig. ⊕⟿18.]

7. REPLEVIN ⊕⟿18—JURISDICTION OVER SUBJECT-MATTER.

Where the court had jurisdiction over the subject-matter involved in an action of replevin, it had inherent power to enter judgment.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 118; Dec. Dig. ⊕⟿18.]

8. REPLEVIN ⊕⟿18—JURISDICTION—STATUTE.

Code Civ. Proc. § 416, providing that from time of granting a provisional remedy the court acquires jurisdiction and control of all subsequent proceedings, must be read in connection with section 1693, providing that, where a chattel is replevied before service of summons, the seizure is regarded as equivalent to the granting of a provisional remedy, for the purpose of giving jurisdiction to the court and enabling it to control the subsequent proceedings.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 118; Dec. Dig. ⊕⟿18.]

9. REPLEVIN ⊕⟿18—JUDGMENT.

In an action in replevin, as distinguished from an action in trover, the goods are claimed as those of plaintiff, and, where defendant does not come in and rebond or reclaim the chattels, the court retains jurisdiction to determine the disposition of the property; the judgment entered being valid and enforceable until defendant moves to vacate upon the ground of irregularity or attacks the jurisdiction of the court.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 118; Dec. Dig. ⊕⟿18.

For other definitions, see Words and Phrases, First and Second Series, Replevin.]

⊕⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. REPLEVIN ☞1—ISSUE FOR DETERMINATION.**

The issue to be determined in a replevin action is the present right to the possession of the property in controversy.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. § 1; Dec. Dig. ☞1.]

**11. JUDGMENT ☞501—BINDING FORCE—JURISDICTION.**

If the court has jurisdiction of the subject-matter of the controversy and of the parties thereto, its judgment, even if irregular, is binding until reversed or set aside by direct attack.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 941; Dec. Dig. ☞501.]

**12. REPLEVIN ☞109—JURISDICTION—SEIZURE BEFORE SERVICE—STATUTES.**

Under Code Civ. Proc. §§ 416, 1693, giving jurisdiction from the granting of a provisional remedy, and providing that seizure of a chattel in replevin is equivalent to the granting of a provisional remedy for the purpose of giving jurisdiction, where piano companies sued the conditional buyers of pianos in replevin, the sheriff seizing the instruments, although summons was not served upon the buyers, the judgments in the actions were binding upon the buyers in their actions to recover the moneys paid by them for the purchases.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 429, 498–501; Dec. Dig. ☞109.]

**13. SALES ☞479(14)—REMEDIES OF SELLER—NOTICE OF RESALE—STATUTE.**

In construing Personal Property Law (Consol. Laws, c. 41) § 66, touching notice to the conditional buyer in default of resale of the property by the seller, the date of mailing the notice and the date of service must be considered as synonymous, to be excluded in reckoning time; and notice mailed September 17th, received September 18th, for a sale on October 2d, gave the requisite 15 days' notice.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1435; Dec. Dig. ☞479(14).]

Actions by Emil Kurzweil against the Story & Clark Piano Company and by Aaron A. Blumgarten against the Mason & Hamlin Company. Verdicts directed for defendants upon the merits.

Eugene I. Yuells, of New York City, for plaintiffs.
C. Bertram Plante, of New York City, for defendants.

FINELITE, J. The above-entitled actions are brought to recover the moneys paid under and pursuant to conditional bills of sale for the purchase of pianos. In the Kurzweil case the amount sought to be recovered is the sum of $253.08, and in the Blumgarten case $175, against the respective defendants. The property was taken from the plaintiffs herein in an action in replevin for the nonpayment of the installments due under said contracts of conditional sale, wherein the plaintiffs herein were the defendants and the defendants herein were the plaintiffs, and the property was sold, as claimed by the defendants herein, in compliance with sections 65 and 66 of the Personal Property Law.

There is no dispute as to the facts. It appears, pursuant to stipulations herein, that the Blumgarten contract was executed on the 29th day of December, 1911, and in the Kurzweil case the contract was executed on the 6th day of May, 1909. Blumgarten thereafter continued

to pay under said contract the installments therein mentioned up to the sum of $175, and omitted to pay any further installments, and Kurzweil paid up to the sum of $253.08. Then actions were instituted in this court by the defendants herein against the plaintiffs herein in replevin, which papers and requisitions were duly delivered to the sheriff of the county of New York, who took possession of said pianos, and in his return made in the Blumgarten case states that he took the property from one Margaret Becker, the agent of the plaintiff, in whose possession he found the chattel, and that he served on her a copy of the summons, affidavit, requisition, etc.; and a similar return was made in the Kurzweil case, that he served the agent therein of said Kurzweil. It is admitted that the plaintiffs herein, being the defendants in the respective replevin actions, were never served with the summons in those actions, or with any process of the court. Judgments were thereafter respectively entered in said actions. Notwithstanding that the judgments were entered in said actions on a service made upon the respective agents of the plaintiffs herein, no proceeding thereafter was taken to cause a summons to be served upon the respective plaintiffs herein, either personally or by publication. Subsequent to the entry of said respective judgments the defendants herein sold the chattels at public auction.

Two questions arise herein: First, have the respective defendants complied with sections 65 and 66 of the Personal Property Law? Second, whether the nonfailure of the service of the summons and complaint upon the respective plaintiffs herein prior to and before the entry of judgment would entitle the plaintiffs herein to recover the amount paid respectively upon the contracts of conditional sale in pursuance of sections 65 and 66 of the Personal Property Law. The plaintiffs herein respectively urge that, notwithstanding the entry of judgment in the respective actions of replevin brought by the defendants herein, there is no judgment against the plaintiffs in said actions, and that thereby the sale which was conducted by the defendants in those actions entitled the plaintiffs to recover the respective amounts paid under and pursuant to said contract of conditional sale, and, further, that under section 1700 of the Code of Civil Procedure, which provides that in an action in replevin the sheriff may take the property from the agent of the defendant, if found in the possession of said agent, and that he may thereupon deliver to such person a copy of the affidavit, requisition and undertaking, it does not require that a copy of the summons be served upon such agent, and the sheriff's return in these actions that he served a copy of the summons as well as the other papers on the agent of the respective plaintiffs may be deemed surplusage. There are three ways of serving a summons on a defendant in civil actions brought in this state under the Code. With none of these requirements have the defendants herein complied. Judgments were thereafter entered herein upon the affidavit made on the return of the sheriff upon the service made upon the respective agents herein mentioned.

[1] It would not be amiss here to state the history of the remedy in replevin (Wait's N. Y. Pr. [2d Ed.] pp. 2020–2023), the history and use as a remedy, and its origin and former use at common law. Ac-

cording to the Mirror, the old action of replevin was devised by Glanvil, Chief Justice to King Henry II, for the purpose of affording a remedy against distress wrongfully taken. Blackstone assumes that this was the only use made of the remedy, but the position he assumes is evidently not well taken, and is not warranted by the books. The old authorities are that "replevin lies for goods taken tortiously, or by a trespasser, and that the party injured may have replevin or trespass at his election." The action was usually brought to try the legality of a distress, but was not confined to this alone, but would lie for any unlawful taking of a chattel. Stauff v. Maher, 2 Daly, 142; Ely v. Ehle, 3 N. Y. (3 Comst.) 506; Pangburn v. Partridge, 7 Johns. 140, 5 Am. Dec. 250; Mason v. Dixon, Sir Wm. Jones, 173; Bishop v. Montague, Cro. Eliz. 824. The object of the remedy was to restore to the party from whom chattels had been wrongfully taken all of his former right to their control upon the giving of security to prosecute the action, and in case the right to the property should be adjudged against him, to restore it to the true owner. At common law the party claiming the right to the possession of personal property could enforce his claim by no process other than the writ of replevin, which issued out of chancery, commanding the sheriff to deliver the property to the owner, and afterward do justice in respect to the matter in his own county court. This form of procedure was attended with two serious disadvantages. As the remedy was chiefly employed in cases of distress, the nature of the property distrained demanded a prompt and efficient remedy to prevent serious loss to the owner. This could not be had at common law. Writs for all England must issue from the office at Westminster, and great delay and inconvenience necessarily attended its employment in distant parts of the kingdom. Neither did the defendant in the action receive any valid security for the return of the property, if judgment was given in his favor, and the judgment was in many instances rendered of no effect by the disposal of the property during the pendency of the action. To remedy these defects various statutes were subsequently enacted, calculated to protect the rights of both of the claimants.

*Changes by Statutes.* The first essential change was wrought by the statute of Marlbridge, which dispensed with the suing out of the writ, and provided that the sheriff should immediately proceed to replevy the goods upon plaint to him made. And it was further provided by the statute (1 Philip and Mary, c. 12) that the sheriff should make at least four deputies in each county, for the sole purpose of making replevins. The security to be given on procuring the return of the property was that required by St. Westm. 2, 13 Edw. I, c. 2. The party replevying was obliged to put in pledges to prosecute the action, and also pledges to return the distress again if the right were determined against him. The sheriff was answerable for the sufficiency of the security taken by him. St. 11 Geo. II, c. 19, specified what the security should be in a replevin on a distress for rent, and required that it should consist of a bond, with two sureties, in a sum of double the value of the goods distrained, conditioned for the speedy prosecution of the suit and for the return of the goods. This bond was made assignable to the defend-

ant, and, on being forfeited, could be sued in the name of the assignee. On the receipt of this bond it became the duty of the sheriff to immediately restore the goods to the possession of the party distrained upon, unless the distrainor claimed a property in them. In this contingency the party replevying was required to sue out a writ de proprietate probanda, in which the sheriff was to try by an inquest in whom the right to the property existed previous to the distress. If the sheriff found this right to be in the distrainor, he could proceed no farther, but must return the claim of property to the Court of Kings Bench of Common Pleas, to be there disposed of. Co. Litt. 145. But if no claim of property was made, or if the sheriff's inquest determined it against the distrainor, then the sheriff was to replevy the goods and deliver them to the party replevying, who thereupon brought his action of replevin.

[2] Originally at common law the action of replevin lay to recover the possession of goods illegally distrained by a landlord. The primary object of the action was to recover possession of the specific chattels. The form of action was so useful that the action was extended to nearly all cases of unlawful caption or detention of chattels, where it was sought to recover the chattels in specie. In many cases, where the plaintiff was unable to obtain the return of the chattels, he could recover their value in the action. Still the action remained essentially one to recover the possession of chattels, as distinguished from actions in trespass or trover to recover damages for the seizure or for the value of the property. The following, taken from the opinion of Cullen, J., in Sinnott v. Feiock, 165 N. Y. at page 446, 59 N. E. at page 265, 53 L. R. A. 565, 80 Am. St. Rep. 736, gives the history of legislation on the subject of replevin in this state:

"There were many technical rules in force relating to this form of action, which at times made proceedings under it difficult, and in 1788 a statute was passed in this state (1 R. L. 1813, p. 31) to simplify the procedure. It directed the form of plaint before the sheriff in which the plea was 'of taking and unjustly detaining' beasts, goods or chattels. Afterwards the Revised Statutes prescribed the rules governing actions of replevin and the procedure therein. Title 12, c. 8, part 3. In the original note of the revisers is stated their intention to so extend the action of replevin 'as to make it a substitute for detinue, and a concurrent remedy in all cases of the unlawful caption or detention of personal property, with trespass and trover.' We do not think the revisers used the term 'concurrent' as meaning 'coextensive,' for by section 6, title 12, it is provided that the action shall in all cases be commenced by writ, the form of which was therein provided. The provisions of chapter 2 of title 7 of the Code of Procedure of 1848, entitled 'Claim and Delivery of Personal Property,' operated as a substitute for those of the Revised Statutes. They direct that at the commencement of the action the plaintiff may replevy the chattels, but in the affidavit to obtain the writ there is required the statement that the defendant 'unjustly detains them.' The provisions of the present Code of Civil Procedure in the article entitled 'Action to Recover a Chattel' (1689–1730), are substantially the same as those of the old Code."

[3] If this was an ordinary action in rem, and judgments entered thereon on the nonservice of the summons, the court, true, would not have jurisdiction over the parties or subject-matter involved, and the defendants thereon would have the right to move to vacate and set aside said judgments on motion or for irregularity, or for error in fact

(sections 1282, 1292, Code of Civil Procedure), and testimony could be taken upon the question of the nonservice or for the want of jurisdiction, which the court would, no doubt, entertain. Callahan v. Levin, 153 App. Div. 71, 137 N. Y. Supp. 996; Sinnott v. Hanan, 156 App. Div. 323, 324, 141 N. Y. Supp. 505. Also in Nichols Practice, volume 3, in discussing the question of procuring judgments to be vacated for error in fact, it says (page 2817) that for lack of jurisdiction a party is entitled to have a void judgment vacated, although it would also be subject to collateral attack, and he says that it is a ground for setting aside such judgment by such procedure that no summons was served; and the learned author also says, at page 2824, that the provision of the Code limiting the time within which motions must be made to set aside judgment for irregularity does not apply to jurisdictional objections, and the learned author cites the case of Meurer v. Berlin, 80 App. Div. 294, 80 N. Y. Supp. 240, which holds to the effect that a motion to cancel a judgment because of failure to serve a summons may be heard at any time, and that objection based upon non-service of summons is not based upon an irregularity.

[4] The plaintiffs herein, failing to move to vacate the judgments as entered in the replevin actions, have the right to urge that the judgments as entered are not res adjudicata, and are at liberty to attack the same collaterally upon the trial herein, which the plaintiffs herein urge. But where there is a provisional remedy the court does not lose jurisdiction over the parties or the subject-matter involved, as upon the execution of the writs of replevin the court acquires jurisdiction for all purposes. Section 1693 of the Code provides jurisdiction, etc., when replevin precedes summons:

"Where a chattel is replevied before the service of the summons, as prescribed in this article, the seizure thereof by the sheriff is regarded as equivalent to the granting of a provisional remedy, for the purpose of giving jurisdiction to the court, and enabling it to control the subsequent proceedings in the action; and is equivalent to the commencement of the action, for the purpose of determining, whether the plaintiff is entitled to maintain the action, or the defendant is liable thereto."

[5] True, the seizure of the chattels by the sheriff under the writ of replevin is regarded, first, as equivalent to the granting of a provisional remedy for the purpose of giving jurisdiction to the court and enabling it to control the subsequent proceedings in the action; second, as equivalent to the commencement of the action for the purpose of (a) determining whether the plaintiff is entitled to maintain the action, or (b) the defendant is liable thereto, as "the issue to be determined in a replevin action is the present right to the possession of the property in controversy as aforesaid."

[6] Section 1700 of the Code of Civil Procedure, as to how chattels are to be replevied, reads as follows:

"If any chattel, described in the affidavit, is found in the possession of the defendant, or of his agent, the sheriff, to whom an affidavit, requisition, and undertaking are delivered, as prescribed in the foregoing sections of this article, must forthwith replevin it, by taking it into his possession. He must thereupon, without delay, serve on the defendant a copy of the affidavit, requisition, and undertaking, by delivering the same to him personally, if he

can be found within the county; or, if he cannot be so found, to his agent, if any, from whose possession the chattel is taken; or, if neither can be found within the county, by leaving the copy at the usual place of abode of either, with a person of suitable age and discretion."

The sheriff having complied with this provision gave the court complete jurisdiction, so as to enable the court to control the subsequent proceedings in the action. It was equivalent to the commencement of the action for the purpose of determining whether the plaintiff was entitled to maintain the action or the defendant was liable thereto. 2 Waits' N. Y. Pr. (2d Ed.) 2025; Code Civ. Proc. 1694.

[7, 8] The court having jurisdiction over the subject-matter involved herein, it also had the inherent power to enter judgment thereon. It is provided by section 416 of the Code of Civil Procedure that from the time of the granting of a provisional remedy the court acquired jurisdiction and has control of all subsequent proceedings. This section must be read in connection with section 1693 of the Code of Civil Procedure as hereinabove quoted. The cases on the question of the jurisdiction obtained by the use of a provisional remedy apply to the jurisdiction obtained by the court and its control of all subsequent proceedings where the requisition has been executed before the service of the summons in the action. As was said in Acker v. Hautemann, 27 Hun, 48:

"The error of the sheriff in not delivering the summons with the other papers was not fatal to the jurisdiction of the court. That jurisdiction is preserved by section 1693 of the Code, when read in connection with section 416. The action was brought to recover possession of personal property, and the effect of the neglect of the sheriff to make service of the summons was that the chattels were replevied before the service of the summons. The seizure, therefore, must be deemed as equivalent to the granting of a provisional remedy for the purpose of giving jurisdiction to the court and enabling it to control the subsequent proceedings in the action, and as equivalent to the commencement of the action for the purpose of determining whether or not the plaintiff had a right to maintain the action, or the defendant is liable thereto."

[9] In an action in replevin, as distinguished from an action in trover, in the first instance, the goods are claimed as those of the plaintiff, and where the defendant does not come in and rebond or reclaim the chattels, the court retains jurisdiction to determine the disposition of the property, and that is what is done by the judgment in the action; the court retaining jurisdiction for the purpose of awarding, by its judgment, the property to the plaintiff in that action and the judgments thus entered in said actions are valid and enforceable until the plaintiffs herein move the court to vacate the same upon the ground of irregularity or attack the jurisdiction of the court; whereas, in an action in trover the plaintiff does not seek possession of the property, but seeks to recover its value. In such an action the plaintiff treats the chattel as having been sold and seeks to recover the value of the article, abandoning its possession to the defendant and pursuing him for the value. This distinction between an action in replevin and one to recover damages for the conversion of the chattel is recognized and approved in Allen v. Fox, 51 N. Y. 562, 10 Am. Rep. 641. The provisions of the Code of Civil Procedure relating to the action of re-

plevin may be considered as a substitute for the provisions of the Revised Statutes. The court fastens upon the identical property and holds it subject to the final determination of the action. During the time the personal property is thus held it is said to be in custodia legis. First National Bank of Oswego v. Dunn, 97 N. Y. 149, 49 Am. Rep. 517.

[10] The issue to be determined in a replevin action is the present right to the possession of the property in controversy. Roach v. Curtis, 191 N. Y. 387, 84 N. E. 283, affirming 115 App. Div. 765, 101 N. Y. Supp. 333; Sinnott v. Feiock, 165 N. Y. 444, 59 N. E. 265, 53 L. R. A. 565, 80 Am. St. Rep. 736; Wheeler v. Allen, 51 N. Y. 37; Alaske Unterstuetzung Verein v. Wall, 28 Misc. Rep. 174, 58 N. Y. Supp. 1115; Mahr v. Livingstone, 55 Misc. Rep. 133, 106 N. Y. Supp. 308. As hereinabove pointed out, immediately upon the seizure by the sheriff of the property under the requisition, the court obtained jurisdiction under section 1693 of the Code of Civil Procedure, which enabled it to control the subsequent proceedings in the action. The writ once executed was equivalent to the commencement of the action for the purpose of determining whether the plaintiff is entitled to maintain the action or the defendant liable thereto, and the court having obtained jurisdiction and for the failure to serve the defendant herein, the entry of the judgment thereupon is merely an irregularity, which would be binding upon the plaintiffs herein until reversed or set aside by direct attack.

[11] The distinction is well pointed out in 2 Wait's N. Y. Pr. (2d Ed.) page 3415, where the author says:

"If the court had jurisdiction of the subject-matter of the controversy and of the parties thereto, its order, even if irregular, is binding until reversed or set aside by direct attack."

He cites Kamp v. Kamp, 59 N. Y. 217, where Judge Allen says:

"But the learned judge clearly recognizes the distinction between cases in which the court has jurisdiction and where it has not, reaffirming the rule that when jurisdiction exists, the decision of the court is conclusive, although erroneous, until reversed, while in the absence of jurisdiction it is a nullity"

And at page 218:

"Judgments of courts proceeding within their jurisdiction cannot be questioned collaterally or by other tribunals, except upon appeal."

In Hughes v. Cuming, 165 N. Y. 91–94, 58 N. E. 794, Judge Vann, writing in this case (which is analogous to the question here involved) says:

"The most important question presented by this appeal is whether the Supreme Court had jurisdiction to make the order of removal. If that court had jurisdiction of the subject-matter of the controversy and of the parties thereto, its order, even if irregular, is binding, until reversed or set aside by direct attack."

[12] From the reasoning hereinabove the court concludes that, having jurisdiction of the subject-matter involved herein, the judgment as entered herein against the plaintiffs, where the defendants were plaintiffs, in the replevin actions, were regular and conclusive against the respective plaintiffs herein.

The court has examined the authorities cited by the plaintiffs herein, and from the examination thereof fails to see where they are applicable to the cases at bar. Meurer v. Berlin, 80 App. Div. 294, 80 N. Y. Supp. 240, was an action upon a promissory note, where the court did not obtain jurisdiction. Julian v. Woolsey, 87 Hun, 326, 34 N. Y. Supp. 321, was an action personal in its nature for the balance due plaintiff under an accounting, where the court recognized the distinction in its opinion, and where it says:

"There is force in the suggestion of appellant that a judgment which appears to be valid is presumptively so until successfully assailed; and there are provisions of the Code which prevent advantage being taken of irregularities in judgments after a certain period. The claim here made, however, is not that the judgment is irregular, but that it is void because the court never obtained jurisdiction by service on the defendant."

Both these decisions were upon motions made in the original action, and were not collateral attacks upon the judgments.

[13] The next question that arises is: Have the defendants herein complied with the Personal Property Law of the state of New York (sections 65 and 66)? The evidence in the case shows that the property was retained by the vendor for the period of time mentioned in the statute, and a notice of the sale was mailed to the respective plaintiffs herein 15 days before such sale by a written notice setting forth when the sale was to be held within the county of New York in compliance with the necessary terms of sale. No question is raised as to the noncompliance with the Personal Property Law as above stated in the Blumgarten Case herein; but the question of insufficient time is raised by the plaintiff in the Kurzweil Case, claiming that, the notice having been mailed to the plaintiff herein on September 17th and not received until September 18th for the sale of the piano on October 2d, the time stated was limited to but 14 days' instead of 15 days' notice as required under the statute. In this plaintiff is in error, as, in construing section 66 of the Personal Property Law, the date of mailing and the date of service must be considered as synonymous, to be excluded in reckoning time, because the plaintiff received the notice by mail on September 18th for the sale of the chattels on October 2d, and plaintiff had the full 15 days' notice as required by said section under the statute.

As the attorneys for the respective parties in both cases have consented in open court that the court may direct a verdict upon the facts and law involved herein, the court directs a verdict in favor of the respective defendants upon the merits.