Syllabus.

# CHICAGO AND NORTHWESTERN RAILWAY COMPANY

## v.

## ROBERT E. JENKINS.

*Filed at Ottawa May 12, 1882—Rehearing denied September Term, 1882.*

1. PLEA IN ABATEMENT—*bankruptcy.* A plea of the bankruptcy of the plaintiff and the transfer of his property and rights to an assignee after the commencement of the suit, in abatement of the action, without any prayer of any kind, is subject to demurrer.

2. PARTIES—*assignee in bankruptcy—substitution as plaintiff.* Under section 5047 of the Revised Statutes of the United States, the assignee, at any time after his appointment, has the right to be substituted as plaintiff, on his request, in an action pending in the name of the bankrupt for the recovery of a debt or other thing which might or ought to pass to the assignee, who may thereafter prosecute the suit the same as if originally brought in his name, and such substitution will furnish a good replication to a plea in abatement of the plaintiff's bankruptcy.

3. ACTION—*commencement of suit—what constitutes, as affecting the limitation of actions.* The bringing of a suit is the issuing of a summons or other process to bring the defendant into court. The substitution of the assignee of a bankrupt as plaintiff in a suit, is not to be regarded as the commencement of the suit by the assignee, within the meaning of the United States statute limiting such actions to two years after the assignee's appointment.

4. LIMITATIONS—*as to suits by assignee in bankruptcy—under the act of Congress—to what suits the statute applies.* The statute of the United States limiting the bringing of suits by the assignee of a bankrupt within two years from the time of his appointment, was designed only to apply to suits brought by him, and not to actions already pending in which he may be substituted as plaintiff, although such substitution may be more than two years after his appointment.

5. SAME—*generally—as to cases embraced in the statute.* In construing statutes of limitations, the courts can only hold that they embrace such subjects as are specifically named or embraced in enumerated classes. Cases or classes not enumerated are excluded from their operation by implication.

6. SAME—*does not run during pendency of suit.* The Statute of Limitations does not run against a cause of action after a suit thereon is commenced, and during its pendency, and numerous cases hold that the mere commencement of a suit without service within the statutory period, will prevent the statute from becoming a bar.

7. SAME—*effect of making new parties, or introducing new matter, by amendment.* Where not only new parties are made in a pending suit, but by amendment also new rights or causes of action already barred are brought before the court, the Statute of Limitations may be properly set up as to such new matter, but not where no new rights are brought into the suit which were not barred when the suit was brought.

8. LIEN—*how created, and by whom—lien of carrier for demurrage.* All liens are created by law or by contract of the parties, and when the law gives none, neither party can create one without the consent or agreement of the other. Hence the consignee of goods shipped by railroad is not bound by rules and regulations of the railway company providing for a lien for demurrage, though published, without his or the consignor's assent thereto when the contract for shipping the goods was made. Even a knowledge of such rules, without assent thereto, will not affect the shipper or consignee.

9. SAME—*presumption as to assent.* The law will never indulge in the presumption of assent to rules of a railway company for a lien for damages caused by delay in receiving the goods shipped, from the publication of the same.

10. DEMURRAGE—*allowable only on maritime contracts.* The right to demurrage does not attach to carriers by railroads. If it exists at all as a legal right, it is confined to the maritime law, and only exists as to carriers by sea-going vessels, and even then it is believed to exist alone by contract.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

Mr. A. M. HERRINGTON, for the appellant:

Under the Bankrupt law the action in favor of the assignee was barred after the lapse of two years. *Gifford* v. *Holmes,* 98 U. S. 252; *Bailey* v. *Glover,* 21 Wall. 346; *Moore* v. *State Ins. Co.* 2 Tenn. Ch. Rep. 380.

If the assignee is not made a party to a pending action until more than two years after his appointment, his claim will be barred, for the amendment by which he is made a party will not relate back, and thereby make him a party *ab initio,* and thereby defeat the limitation. *Cogdell* v. *Exume,* 10 N. B. 327; S. C. 69; N. C. 464.

The rule, without an exception, is, that all causes of action are vested in the assignee upon the execution of the assign-

ment, and the limitation begins to run from that time, and this applies equally to courts of equity and courts of law. *Bailey* v. *Wier*, 21 Wall. 342.

And the limitation applies to the State court as well as to the Federal courts.   *Comegg* v. *McCord*, 11 Ala. 932; *Archer* v. *Duvall*, 1 Fla. 219.

This court has held that when a new party is brought into the suit against whom the Statute of Limitations has run, it may be pleaded, and the fact that the suit was pending does not stop the statute.   *Clark* v. *Manning*, 95 Ill. 581; *Crowl* v. *Nagle*, 86 Ill. 440.

The bankruptcy of a plaintiff after suit brought may be pleaded, and thereby defeat the action, and the assignee will be compelled to proceed *de novo.*  1 Chitty's Pleading, (16th Am. ed.) 27; *Kinnear* v. *Tarrant*, 15 East, 630; *Biggs et al.* v. *Cox*, 4 Barn. & Cres. 921; *Eyster* v. *Goff et al.* 92 U. S. 524.

Where a party to an action has received his discharge in bankruptcy pending the action, he has no further interest in the suit.   *Knox* v. *Exchange Bank*, 12 Wall. 379; *Herranden* v. *Howard*, 9 id. 665.

In trover a lien must be specially pleaded, and can not be given in evidence under the general issue, and hence the pleas were proper, and were not subject to the objection that they amounted to the general issue.   1 Chitty's Pleading, (16th Am. ed.) 530; *Hahn* v. *Ritter*, 12 Ill. 80.

Messrs. SLEEPER & WHITON, for the appellee:

This action was pending in the name of Noyes & Messenger at the time the proceedings were had in bankruptcy, and Jenkins was admitted to prosecute the same in his own name.   Revised Statutes of the United States, sec. 5047.

The provisions of sec. 5057, United States Statutes, only limits the maintenance of actions which are commenced by or against an assignee, and do not purport to interfere with

the prosecution of actions pending in the name of the bank-
rupt at the time when the bankruptcy proceedings are com-
menced.  *Kane* v. *Pilcher*, 7 B. Mon. 651; *Judson* v. *Lathrop*,
6 La. Ann. 587; *Lotting* v. *Fassman*, 17 N. B. 183; *Walker*
v. *Towner*, id. 285; *Steele* v. *Moody*, id. 558; *Wilt* v. *Stockton*,
15 id. 23; *Norton* v. *Villebeuve*, 13 id. 304; *Holbrook* v. *Bren-
ner*, 31 Ill. 501; *Stevens* v. *Hauser*, 39 N. Y. 302; *In re Mas-
terton*, 4 N. B. 180; *Sedgwick* v. *Casey*, id. 161; *Dubois* v.
*Anderson*, 6 id. 145.

Admitting the assignee to prosecute the suit, was only con-
tinuing the same, and was not the commencement of a new
suit, and is analogous to continuing a suit by an executor
after the plaintiff's death.  *Kane* v. *Pilcher*, 7 B. Mon. 651;
*Morris et al.* v. *Swartz*, 10 N. B. 305; *Mirus et al.* v. *Swartz*,
37 Texas, 13.

The special pleas were bad on special demurrer, as amount-
ing to the general issue.  *Knobel* v. *Kucher*, 33 Ill. 308; *Illi-
nois Central R. R. Co.* v. *Johnson*, 34 id. 389; *Johnston* v.
*University*, 35 id. 518; *Kennedy* v. *Strong*, 10 Johns. 289;
*Cullett* v. *Flinn*, 5 Cow. 466; *Hunt* v. *Cook*, 19 Wis. 463.

The third plea professes to set up a lien on the paper for
demurrage, and seeks to justify the conversion by reason of
that lien, but in fact shows none.  The rule recited does not
pretend to create or impose any lien, and no agreement for
any lien is stated.  The law does not impose a lien as it does
for freight.  2 Redfield on Railroads, title "Demurrage," 191;
*Crommellin* v. *New York and Harlem R. R. Co.* 10 Bosw. 77;
4 Keyes, 90.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Noyes & Messenger, a business firm in
Chicago, had consigned to them a quantity of paper, from
Clinton, Iowa, by the road of appellant.  It arrived at its
depot in Chicago on the 4th of July, 1872.  The consignees
were afterwards notified of its arrival.  On the 11th of that

month they paid the freight and removed one dray load, but the company refused to deliver the balance of the paper until the consignees should pay five dollars a day for each day it remained on the track after twenty-four hours from the time of its arrival, which was claimed for demurrage. This the consignees refused to pay, and after a demand and refusal, brought trover to recover damages for its conversion. The defendant pleaded the general issue.

The case remained on the docket in this condition until in April, 1874, when Noyes & Messenger were declared bankrupts by the United States District Court, and appellee was appointed assignee of their estate, and the requisite assignment was made to him. No further action was taken in the case until on the 12th day of April, 1878, when, with the leave of the court, the company filed a plea that the plaintiffs had been adjudged bankrupts. Jenkins thereupon filed his petition for leave to be substituted as a party plaintiff, and to be permitted to prosecute the suit, and the substitution was made, and the leave granted by the court.

Afterwards, the company filed four pleas in bar of the action. The first, the general issue; second, the Statute of Limitations of two years; third, a plea that the defendant had the right to retain the property to secure its lien for demurrage; and fourth, the paper was delivered to defendant, to be held until plaintiffs should pay all moneys due or to become due on account of the transportation of the paper, and to pay all charges to become due for demurrage, unloading or warehousing the same. Appellee took issue on the first, and replied to the plea of the Statute of Limitations that the cause of action had accrued to Noyes & Messenger within two years of the commencement of the suit; that plaintiff had been substituted since the original plaintiffs had been declared bankrupts. To the third and fourth pleas he demurred specially that they severally amounted to the general issue. Afterwards, defendant filed a plea of the Statute

of Limitations of five years, which was traversed. Subsequently the demurrer was heard to the replication to defendant's second plea, and it was carried back and sustained to that plea. The parties waived a jury, and by consent submitted the case to the court for trial, on an agreed statement of facts, and the court found the issues for plaintiff, and assessed his damages and rendered judgment for $1370.45. Defendant appealed to the Appellate Court for the First District, where the judgment was affirmed, and the case is brought to this court by appeal.

It is urged that the court erred in sustaining the demurrer to the plea averring that Noyes & Messenger had become bankrupts; that Jenkins had been appointed their assignee, and all of their property and rights were assigned to and became invested in him, and he became thereby entitled to the cause of action. This plea has no prayer of any kind, but is in the nature of, or was intended no doubt as, a plea in abatement. All pleas of that character must conclude with a prayer that the suit abate. It was for that reason subject to a demurrer. Again, if it could be held that the suit could be abated for the want of a proper party plaintiff, under the provision in the 5047th section of the United States Revised Statutes, appellee was substituted as plaintiff. That provision is this: "If at the time of the commencement of the proceeding in bankruptcy an action is pending in the name of the debtor for the recovery of a debt or other thing which might or ought to pass to the assignee by the assignment, the assignee shall, if he requires it, be substituted to prosecute the action in his own name, in like manner and with like effect as if it had been originally commenced by him." This is clear and emphatic that he shall be thus substituted. Nor does it fix or limit any time within which the substitution shall be made. The statute says it shall be done if the assignee shall require it. This substitution, then, was a sufficient replication to the plea, had it been good. It supplied

the necessary and proper party plaintiff, and authorized him to prosecute the suit with like effect as had he been the original plaintiff in the case.

It is insisted that the court erred in sustaining the plea of limitations of the Bankrupt act. The 5057th section of the United States Statutes provides: "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought *within two years from the time when the cause of action accrued for or against such assignee*. And this provision shall not in any case revive a right of action barred at the time when the assignee is appointed." Appellant contends, that inasmuch as more than two years expired after appellee was appointed assignee, and his substitution as plaintiff, the bar of this section became complete,—that the statute began to run as soon as he was appointed,—that an action accrued to him at that time, and that his substitution was the commencement of the suit by him. If this be the true construction of the statute, then the court erred in sustaining the demurrer to the plea. The fallacy of the argument consists in calling appellee's substitution as plaintiff, the bringing of a suit. The bringing of a suit is the issuing of a summons or other process, to bring the defendant into court. This is one of the most familiar, best settled and recognized rules of the law. See Stephens' Pleading, page 5, (2d ed.); 3 Blackstone's Commentaries, 273; 1 Chitty's Pleading, page 107.

It then follows that this suit was brought by Noyes & Messenger, and not by appellee. Instead, then, of this suit being brought more than two years after appellee's appointment, it was brought before, and was pending at the time, and so continued until his substitution as plaintiff. Had no objection been made by plea by appellant, the suit could have progressed to its final termination in the name of Noyes &

Messenger. This was fully recognized by appellant in filing the plea that they had ceased to have any interest in the cause of action.

In the common acceptation of the term the suit was not brought by appellee by being substituted as plaintiff. All persons would understand it was a misuse, if not a perversion, to so use the term, and we must presume Congress used the term in its ordinary and general sense, unless repelled by the context. A careful consideration of the entire section, we think, does not show that it was intended in a different sense. The 5047th section gave the assignee the right, without limitation or any restriction, to be substituted. Nor is there any limitation or proviso that he shall be thus substituted within two years of his appointment. If such had been the purpose it could have been easily expressed, and the natural inference is that it would have been so expressed. The terms of the statute relate alone to the bringing of the suit within the statutory period, and the courts have no power to add to or bring cases under its provisions not provided for in terms or by necessary implication. In construing statutes courts can only hold that they embrace such subjects as are specifically named or embraced in enumerated classes. To go beyond that is judicial legislation. This case is not named, nor is it embraced in a class. It is excluded by implication from actions brought after appellee's substitution as plaintiff. It clearly is not embraced in that class, and by the previous section he had the right to be substituted without limitation, terms or conditions. We are clearly of opinion, from the language of these two sections, that there was no bar of the action. While statutes of limitation under modern rules must be fairly and reasonably construed to effectuate the intention of the legislature, like other enactments, the courts are prohibited from straining construction to embrace cases not within the language or meaning of the enactment. The

ancient rule was to construe them strictly, so as to exclude all cases not expressly named in the statute, but the rule has been modified by the more modern decisions.

It is, however, urged that other courts have given the section a different construction, and the case of *Binley* v. *Glover*, 21 Wall. 342, is referred to as being in point. If this is true, it is conclusive, as that court has the constitutional right to give authoritative construction to all acts of Congress, and so given, all other tribunals must conform to it. But does it decide this question? That case was where the assignee brought suit, more than three years after his appointment, for the recovery of property rights transferred from the bankrupt to him by the assignment. That was a suit brought by him, and is within the very terms of the statute, and the decision could not be otherwise than the action was barred. The surprise is that it was so far doubted as to have been contested. But this is wholly a different question from that. This is debatable, but that was too clear for dispute. In that case the court say, in considering this section, that "it is precisely like all other statutes of limitation, and applies to all judicial contests between the assignee and other persons touching the property, or rights of property, of the bankrupt, transferable to or vested in the assignee, where the interests are adverse, and have so existed for more than two years from the time the cause of action accrued for or against the assignee. Such is almost the language in which the provision is expressed in the section." This is not in point, because this question was not before the court. But stress is laid on the language, "and applies to all judicial contests between the assignee and other persons." And because this was a contest between appellee and appellant, this language requires the bar to be applied. How does it apply to all judicial contests? Why, as the court, in the same sentence, said, like all other statutes of limitation. This is the manifest and only reasonable meaning of the

language. We must consider it in its connection, and not as a separate and distinct clause, giving a definition.

If like all other statutes of limitation, then who ever heard of the statute running while an action to recover the matter in dispute was pending? Such a claim, we apprehend, was never made in a court. On the other hand, the books are full of cases holding the mere commencement of a suit, without service within the statutory period, will prevent it from becoming a bar. This action, we have seen, was clearly pending, and if, as that court says, this section is precisely like all other statutes of limitation, how is it possible to hold the statute could run and bar the action, when it was all of the time pending? Would any person contend that were the assignee to begin an action just before the close of two years after his appointment, and it were to be undecided for more than two years from its commencement, the defendant might plead this two years statute and bar a recovery? Surely not. And why? Because the suit was not barred when the action was brought, and after it was commenced the statute could not run while the suit was pending. This is the construction given by all courts to all statutes of limitation. There is the same reason for applying the statute to the case at bar.

The statute gives the right to the assignee to be substituted in the place of the bankrupt plaintiff, and to prosecute the suit in his own name, "in like manner, and with like effect, as if it had been originally commenced by him." Was it ever supposed that under any other statute of limitations, where an executor, administrator or other person was substituted in the stead of the plaintiff who brought the suit, the defendant might plead the statute, and bar a recovery? Surely not. And the Federal Supreme Court says this Limitation law is precisely the same in its application as all others. If it be said that in such cases the suit abated by the death of the plaintiff, at common law, and in

such cases the statute authorizes it to be revived and continued in the name of the representative, and its revival was the commencement of a new suit,—if this be true, still the suit was never abated. . It was still pending, and the act authorized the assignee to continue its prosecution. Had the suit abated by the bankruptcy of the plaintiffs, there would be more seeming plausibility for saying that the substitution of appellee was the commencement of a new suit by him, and for claiming the plea could have been interposed. But that is not the fact in this case. Nor does the case of *Gifford* v. *Holmes*, 98 U. S. 248, announce a different rule. The other cases referred to in the lower Federal courts, if they announce a different rule, are not binding on us, further than supported by reasoning to convince our judgment. We think that the canons of construction not only support, but require, the conclusion announced by us. In these views we are supported by the case of *Kane* v. *Pilcher*, 7 B. Mon. 651. In that case this precise question was presented, and the court held the statute did not apply. And the case of *Herndon* v. *Howard*, 9 Wall. 664, seems in principle to support this doctrine, if it needs support.

The cases of *Clark* v. *Manning*, 95 Ill. 581, and *Crowl* v. *Nagle*, 86 id. 437, are claimed to have a bearing on this question. These cases have no application, because there were not only new parties made, but rights already barred before they were brought into court for the first time were brought before the court. Here no new rights were brought into the contest. Had appellee amended the declaration so as to embrace a new cause of action not before the court, these cases would then be applicable. But that was not done in this case, but it remained precisely the same, as to the matter in litigation, after as before the substitution of appellee as plaintiff.

It is claimed that appellant had the right to hold the property until its charges for demurrage were paid,—that they

were a lien on the property, and it was not required to make delivery until they were paid. The claim is based on rules and regulations adopted and published by the company. It will be conceded that all liens are created by law, or by contract of the parties. Where the law gives no lien, neither party can create it without the consent or agreement of the other. Noyes & Messenger were therefore not bound by these rules unless they assented to them when the contract for shipping the goods was entered into by the parties, and such a contract is not claimed. But it is insisted that as the rules were public, and generally understood, it must be presumed they assented. For the purpose of creating such a lien on property the law will never indulge such presumptions. There is no evidence or agreement that either the consignor or consignee ever had notice or knew of such regulations. But even if they had, unless they agreed to be bound by them the rule could create no such lien.

We held in the case of *Illinois Central R. R. Co.* v. *Alexander*, 20 Ill. 23, that railroad companies, when they had carried goods to their destination, if not removed by the consignee might store them in their warehouses, and thus terminate their liability as common carriers, and thereby assume the relation and liabilities of warehousemen. To the same effect is the case of *Richards* v. *Michigan Southern and Northern Indiana R. R. Co.* id. 404; and in the case of *Porter* v. *Chicago and Rock Island R. R. Co.* id. 407, it was held it was their duty to do so, or remain liable for loss as common carriers. It was held in the former of these cases, that when stored, and they had placed the goods in their warehouse, they were entitled to charge the customary price for such services, and on such charges being paid or tendered, and a refusal by the company to deliver on demand, it became liable for a conversion.

The right to demurrage, if it exists as a legal right, is confined to the maritime law, and only exists as to carriers

by sea-going vessels. But it is believed to exist alone by force of contract. All such contracts of affreightment contain an agreement for demurrage in case of delay beyond the period allowed by the agreement, or the custom of the port allowed the consignee to receive and remove the goods. But the mode of doing business by the two kinds of carriers is essentially different. Railroad companies have warehouses in which to store freights. Owners of vessels have none. Railroads discharge cargoes carried by them. Carriers by ship do not, but it is done by the consignee. The masters of vessels provide in the contract for demurrage, while railroads do not, and it is seen these essential differences are, under the rules of the maritime law, wholly inapplicable to railroad carriers.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*