Railroad Company *v.* Hunt.

THE EAST TENNESSEE, VIRGINIA & GEORGIA RAIL-
ROAD COMPANY *v.* J. J. HUNT.

1. RAILROADS. *Freight. Damage.* A railroad company is not entitled
to demand or receive either freight charges or demurrage until it is
in a condition to tender a delivery of the goods at a convenient, safe
and uninterrupted point at its depot. The legal effect of its under-
taking is to deliver the goods at a point and in a manner to enable
the consignee to receive them without inconvenience, delay or inter-
ruption. After notice it may require prompt action on the part of
the consignee, but he may demand of it free, convenient, safe and
undisturbed access to his goods.

2. SAME. *Same. Tender.* A consignee who is ready to pay freight for
the goods, on a refusal to deliver them, may maintain trover for the
goods, there being no other legal claim upon them, and he is not
bound first to make a legal tender of the freight.

3. SAME. *Demurrage. Lien.* A railroad company has no lien upon
goods for demurrage in absence of contract.

FROM WASHINGTON.

Appeal in error from the Circuit Court of Wash-
ington county.    NEWTON HACKER, J.

W. M. BAXTER and JOHN ALLISON for Railroad
Company.

H. H. INGERSOLL and C. E. DOSSER for Hunt.

TURNEY, J., delivered the opinion of the court.

On April 17, 1884, there arrived over the East
Tennessee, Virginia & Georgia Railroad, at Jonesboro,
a car load of stoves, etc., consigned to defendant in
error. The goods had been received by the "Old

Dominion Steamship Company," and shipped April 11, via Norfolk. The bill of lading provides: " All articles named in this bill of lading are subject to charges for necessary cooperage and repairs."₁

" The several carriers shall have a lien on the goods specified in the bill of lading for all arrearages of freight and charges due by the same owners or consignees on other goods."

" The goods shall be received by the owner or consignee at the station or wharf of the carrier at the ultimate point of delivery; and if not taken away within twenty-four hours after their arrival, may, at the option of the delivering company, be sent to a *warehouse,* or be permitted to lie, when landed, all at the expense and risk of the shipper, owner or consignee."

It was three or four days before the car was placed at the point for unloading, and when this was done, and the consignee sent hands to unload, the agent refused to unlock the car because the freight had not been paid. The consignee offered to pay the freight once or twice, but the company would not place the car in position to be discharged of the goods, because the company claimed damages of $2 or $2.50 per day on the cars, of which payment was refused. After the first refusal to unlock the car it was removed from the place for unloading, and not returned.

Under any state of facts, in the absence of agreement to the contrary, the company was not entitled to demand or recover either freight charges or demurrage until it was in condition to tender a delivery

of the goods at a convenient, safe and uninterrupted point at its depot or on its road. The legal effect of its undertaking was to deliver the goods at a point and in a manner to enable the consignee to receive them without inconvenience, delay or interruption. If it requires the consignee to remove the goods in a limited time, it must do all in its power to enable him to do so, while it may, after giving notice of the receipt of the goods, require prompt action on the part of the consignee, he may demand of it free, convenient, safe and undisturbed access to his goods.

On May 5, 1884, Hunt commenced this action of replevin for the stoves, etc. The company admits the tender, but insists it was not pursued by bringing the money into court, and therefore the action must fail.

Redfield, in volume 2, page 186, of his work on Railways, states the rule to be: "The consignee who is ready to pay freight may maintain trover for the goods on a refusal to deliver them, there being no other legal claim upon them, and he is not bound first to make a formal tender of the freight." We think the rule a sound one; without it it would be in the power of common carriers to retain goods for purposes wholly disconnected with the carriage of the goods, and when sued for them, to defeat the owner because the money is not brought into court, and retain the goods until a debt due for another consideration is paid. There can be no good reason why a tender of the amount due does not at once entitle the owner to the possession of his goods. If it shall

turn out the common carrier is the loser, his loss is the consequence of his own wrong in not receiving his own when it was offered to him. Why should he, because he may think the law gives him a lien for another claim, but in which he is mistaken, be permitted to force the consignee to litigate with him to the point of convincing him of his mistake, and when he has discovered it, say to the consignee, "I have wrongfully withholden your goods; the law was with you, and I violated it, but you have failed during the litigation to keep the money constantly in court, and be without its use, therefore, through my wrong, you must fail to recover your goods." It is a sound rule, that when one of two innocent persons must suffer, he who brought about the injury must sustain the loss. In this instance the plea of the company can only be that it mistook the law.

It is next argued that the company has a lien for "demurrage." The goods remained in the car from their arrival till replevied, and for this a demurrage of $2.50 per day is claimed, with a lien upon the goods. In his work on Sales, page 738, section 796, Mr. Benjamin defines a lien to be, "A right of retaining property until a debt due to the person retaining it has been satisfied," and adds, "but this lien extends only to the price." If, by reason of the vendee's default, the goods are kept in warehouse, or other charges are incurred in detaining them, the lien does not extend to such claim, and the vendor's remedy, if any, is personal against the buyer. In *Somes* v. *The British Empire Shipping Company,* it

was held by the unanimous judgment of the Queen's Bench, the Exchequer Chamber, and the ° House of Lords, " that a ship-builder, who kept a ship in his dock after repairing her, in order to preserve his lien, had no claim at all for dock charges against the owner of the ship for the time elapsed between the completion of the repairs and the delivery of the ship, notwithstanding the owner's default." There is no difference in principle between the case at bar and that cited. 2 Redfield on Railways, page 206, section 191, defines demurrage to be " a claim by way of compensation for the detention of property which is subsequently restored."

The detention here was by the railroad company. It not only kept its own but the plaintiff's property; therefore it cannot complain of " demurrage," or claim damages therefor. On same page, sub-section 3, Mr. Redfield says: " A railway has no lien for the compensation impliedly due them for the detention of their cars an unreasonable time in discharging the cargo, the cars remaining during the time in a public highway." Here the car did remain not only in a public highway, but at points not adapted to its convenient discharge, and not at places at which it was usual to discharge cargoes.

To adopt the argument of counsel, and construe the word " charges " in the bill of lading to include demurrage, would be to add to a written undertaking, prepared by the common carrier, purporting to contain every condition and restriction under which it undertook to convey the goods, and by its term confining

the term "charges" to cooperage and repairs; also, to further enlarge the terms by substituting the car in which the goods have been shipped for a warehouse, the carrier having provided that, in case of delay in unloading, it might place the goods in a warehouse at the charge of the consignee.

The charge of his Honor, the circuit judge, is correct on the only two questions arising in the case. The exceptions of plaintiff in error are disallowed, exceptions of defendant allowed, the report of the Referees rejected, and judgment affirmed.